**DEPARTMENT OF the TREASURY, Internal Revenue Service, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, National Treasury Employees Union, Intervenor.**

No. 82–1397.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 11, 1983.

Decided May 6, 1983.

Marc Richman, Atty., Dept. of Justice, Washington, D.C., with whom William Kanter, Atty., Dept. of Justice, Washington, D.C., was on the brief, for petitioner.

William R. Tobey, Atty., Federal Labor Relations Authority, Washington, D.C., with whom Steven H. Svartz, Acting Sol., Federal Labor Relations Authority, Washington, D.C., was on the brief, for respondent.

Robert M. Tobias, Washington, D.C., with whom John F. Bufe, Lois G. Williams and James R. Lawrence, Washington, D.C., were on the brief, for intervenor. William F. White, Washington, D.C., also entered an appearance for intervenor.

Before TAMM and GINSBURG, Circuit Judges and PECK,* Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case concerns the duty of a federal agency to negotiate with its employees' collective bargaining representative about the conduct of internal security interviews that may expose the interviewed employee to disciplinary action. Petitioner Internal Revenue Service (IRS or Service) challenges a decision of the Federal Labor Relations Authority (FLRA or Authority) ordering the IRS to negotiate with the National Treasury Employees Union (NTEU or Union) on twelve Union proposals, all of them relating to investigatory interrogations of employees. *See National Treasury Employees Union,* 8 FLRA 136 (1982). The IRS resists the FLRA's order with respect to two of the twelve proposals. One of the two interrelated proposals concerns the advice the IRS must give to an employee "who refuses to respond or shows any reluctance to respond" to an inquiry in a noncriminal investigation, Joint Appendix (J.A.) 5; the other concerns the course the Service should follow when an employee "[refuses] to answer questions based upon lack of relevancy and/or materiality to the performance of duty." J.A. 5–6. Negotiation over these proposals, the IRS contends, would interfere impermissibly with its "management right" to determine the Service's internal security practices. *See* 5 U.S.C. § 7106(a)(1).

The IRS attacked all twelve proposals before the Authority without differentiating among them; the Service broadly maintained that "[t]he security program . . . embodied in [its] Inspector's Handbook" [1] was not a bargainable matter. J.A. 15–16. In a terse opinion, the FLRA rejected this sweeping but unspecific challenge.[2] Before this court, the Service has abandoned its highly general charge; instead, it has explained with particularity why it continues to resist placement of two of the twelve proposals on the bargaining table.

Ordinarily, we would turn away an agency that presented initially in court the full and detailed statement of position it should have furnished in its appearance before the Authority. *See* 5 U.S.C. § 7123(c); 5 C.F.R. § 2424.6(a)(2). However, an intervening FLRA decision renders this case exceptional. After time had expired to move for FLRA reconsideration, the Authority issued an opinion that is at least arguably inconsistent, in result and rationale, with the decision the IRS challenges here. *See American Federation of Government Employees,* 8 FLRA 347 (1982), *petition for review pending on other grounds,* No. 82–1622 (D.C.Cir. filed June 3, 1982). To avoid uncertainty and confusion in an area significant to agencies and their employees, and

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The Handbook is intended to assist IRS Internal Security Division inspectors in performing their duties. J.A. 28 (Inspector's Handbook § 125.31). The Internal Security Division, as its name indicates, has primary responsibility for all matters of internal security at the IRS. Duties of Division inspectors include investigating IRS employees and others regarding criminal and administrative misconduct, and conducting background checks of IRS appointees and job applicants. J.A. 27 (Inspector's Handbook § 125.1).

2. Before the FLRA the IRS also asserted that the NTEU's proposals were outside the realm of bargaining because they addressed matters subject to a government-wide rule or regulation, J.A. 17–18 (citing 5 U.S.C. § 7117(a)(1)), and because they extended to employees who were not members of the bargaining unit. J.A. 19. The FLRA rejected the first of these objections and did not address the second. *See National Treasury Employees Union, supra,* 8 FLRA at 138. The IRS has not renewed either of these objections in its presentation to this court.

to afford the FLRA an opportunity to provide more secure guidance, we remand the case so that the Authority may address the Service's now precisely stated objections.

## I. BACKGROUND

### A. *Statutory Duty to Bargain*

The Federal Service Labor-Management Relations Act[3] accords federal employees an encompassing right "to engage in collective bargaining [through representatives chosen by them] with respect to conditions of employment." 5 U.S.C. § 7102(2). *See also id.* §§ 7103(a)(12) ("collective bargaining" defined) & 7103(a)(14) ("conditions of employment" defined). Federal agencies have a corresponding duty "[to] negotiate in good faith [with the exclusive representative of their employees] for the purposes of arriving at a collective bargaining agreement." *Id.* § 7114(a)(4). *See also id.*

§ 7114(b) (obligations included in "duty to negotiate in good faith"). With several exceptions stated in the Act,[4] the agency's expansive obligation to bargain includes "matters which are the subject of . . . [an agency] rule or regulation." *Id.* § 7117(a)(1). The exception relevant here is the major one the Act specifies, the "management rights" clause set out in section 7106(a).[5]

The "management rights" clause exempts from negotiation, *inter alia,* agency determinations about its "mission, budget, organization, number of employees," and, of concern in this case, "internal security practices." *Id.* § 7106(a)(1). While "management rights" themselves are nonnegotiable, bargaining is nonetheless authorized on "procedures which . . . the agency will observe in exercising [its nonbargainable prerogatives]." *Id.* § 7106(b)(2).[6]

**3.** Civil Service Reform Act of 1978, Title VII, 5 U.S.C. §§ 7101–7135 (Supp. V 1981). For discussion of the Act's history and provisions, see *Department of Defense v. FLRA,* 659 F.2d 1140, 1144–47 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). *See also Library of Congress v. FLRA,* 699 F.2d 1280, 1283–84 (D.C.Cir.1983); *National Treasury Employees Union v. FLRA,* 691 F.2d 553, 554–55 (D.C.Cir.1982).

**4.** *See generally Library of Congress v. FLRA, supra* note 3, 699 F.2d at 1284 & n. 16 (exceptions to duty to bargain); *Department of Defense v. FLRA,* 685 F.2d 641, 644 (D.C.Cir.1982) (same).

**5.** The full text of section 7106 states:
(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
(1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and
(2) in accordance with applicable laws—
(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;
(C) with respect to filling positions, to make selections for appointments from—
(i) among properly ranked and certified candidates for promotion; or

(ii) any other appropriate source; and
(D) to take whatever actions may be necessary to carry out the agency mission during emergencies.
(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
(1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;
(2) procedures which management officials of the agency will observe in exercising any authority under this section; or
(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.
5 U.S.C. § 7106. As indicated *supra* note 2, the IRS invoked before the Authority, but not in court, the provision of 5 U.S.C. § 7117(a)(1) limiting the duty to bargain over rules and regulations to cases in which "the rule or regulation is not a Government-wide rule or regulation."

**6.** For discussion of the problematic distinction between nonnegotiable management rights under section 7106(a) and negotiable procedures for exercising those management rights under section 7106(b), and the standards for applying that distinction, see *Department of Defense v. FLRA, supra* note 3, 659 F.2d at 1150–52, 1153–58, 1159–62.

If an agency asserts that a matter proposed for bargaining is nonnegotiable, the employees' representative may ask the FLRA to resolve the issue. *Id.* §§ 7105(a)(2)(E) & 7117(c); *see* 5 C.F.R. pt. 2424 (1982) (procedures for Authority resolution of negotiability issues). The FLRA may order an agency to bargain in good faith on a proposal, 5 C.F.R. § 2424.10(b), but it may not "compel either party to agree to a proposal or to make a concession." 5 U.S.C. § 7103(a)(12).[7]

## B. *Facts*

In November 1979 the NTEU, as exclusive representative of consolidated units of IRS employees,[8] requested notice from the IRS of changes the Service planned to make in certain sections of the IRS Inspector's Handbook. The Service sent the Union copies of the amended sections and invited submission of any proposals the NTEU might have. In December 1979 the Union sent the IRS a set of twelve proposed alterations for Handbook sections relating to employee internal security interviews. J.A. 2–6. The Service eventually alleged that all twelve proposals were nonnegotiable because they involved "matters which are an integral part of the internal security practices of the Agency as defined in 5 U.S.C. [§] 7106(a)(1)." J.A. 8 (letter from IRS to NTEU (June 4, 1980)). The NTEU thereupon appealed to the FLRA. J.A. 1 (letter from NTEU to FLRA (June 19, 1980)).

7. "When authorized negotiations reach an impasse, either party may take the dispute to the Federal Service Impasses Panel, *see* 5 U.S.C. § 7119(b)(1), which is empowered to take any necessary action to resolve it, *id.* § 7119(c)(5)(B)(iii), including binding arbitration and imposed settlement." *American Fed'n of Gov't Employees, Local 1968 v. FLRA*, 691 F.2d 565, 569 n. 26 (D.C.Cir.1982), *petition for cert. filed*, 51 U.S.L.W. 3535 (U.S. Jan. 7, 1983) (No. 82–1144). Refusal to follow the Panel's directive constitutes an unfair labor practice. 5 U.S.C. §§ 7116(a)(6) (agency unfair labor practice) & 7116(b)(6) (union unfair labor practice). The Panel's decision is reviewable, first before the Authority, then in court, in an unfair labor practice proceeding. *See id.* §§ 7105(a)(2)(G) & 7118(a)(6)–(8) (FLRA resolution of unfair labor practice complaints); *id.* § 7123(a) (judicial review of FLRA decisions). *See, e.g., National Ass'n of Gov't Employees,*

The Authority determined that the Union's proposals, without exception, were bargainable. *See National Treasury Employees Union, supra.* Based upon the record before it, the FLRA viewed the twelve proposals as "procedures," negotiable under 5 U.S.C. § 7106(b)(2),[9] intended "to ensure that an employee who is about to be interrogated is notified of the circumstances under which questioning will occur." *National Treasury Employees Union, supra,* 8 FLRA at 137. Nothing in the NTEU's submissions to the IRS, the Authority said, encroached upon "the Agency's determination whether to interview a particular employee." *Id.* No argument had been made by the IRS, the FLRA observed, "that any of the particular procedures set forth in the proposals are prohibited by law." *Id.* Nor did the Authority discern "that the proposals would specify substantive criteria pursuant to which management must determine its internal security practices." *Id.* The IRS itself had provided no "specific support" for its position, the Authority stressed, nor did the FLRA find such support "otherwise apparent." *Id.*

The Service's petition for review, filed pursuant to 5 U.S.C. § 7123(a),[10] narrows the controversy to NTEU Proposals 10 and 11. *See* Brief for Petitioner 6 n. 2. Proposal 10 would add to section 634.6(1) of the IRS Inspector's Handbook:[11]

*Locals R12–130 & R12–145,* 7 FLRA 245, 252–53 (1981).

8. The NTEU is the exclusive representative for consolidated units of IRS employees working in the IRS National, Regional, and District Offices, the IRS Service Centers, the IRS Detroit Data Center, and the IRS National Computer Center. J.A. 12 & 43.

9. *See supra* notes 5 & 6.

10. *See also* Fed.R.App.P. 15(a).

11. Section 634.6(1) of the IRS Inspector's Handbook currently reads:
 If during a non-criminal or non-prosecution confrontation-type interview, the employee refuses to testify or respond to questions, he should be advised of 217.1 of IRM 0735.1, Handbook of Employee Responsibilities and

Further, the employee who refuses to respond or shows any reluctance to respond in a non-criminal conduct type case shall be advised orally and in writing:

"You are here to be asked questions pertaining to your employment with the Internal Revenue Service and the duties that you perform for the IRS. You have the option to remain silent, although you may be subject to removal from your employment by the Service if you fail to answer material and relevant questions relating to the performance of your duties as an employee. You are further advised that the answers you may give to the questions propounded to you at this interview, or any information or evidence which is gained by reason of your answers, may not be used against you in a criminal proceeding except that you may be subject to a criminal prosecution for any false answer that you may give."

J.A. 5. Proposal 11 would substitute in place of current section 634.6(3): [12]

Refusal to answer questions based upon lack of relevancy and/or materiality to the performance of duty.

(1.) An employee may refuse to answer questions which are not relevant or material to the performance of his/her duty. Such questions will be withdrawn when asked as well as avoided at all cost.

(2.) [I]f an employee refuses to answer for this reason and the Inspector disagrees with the employees's [sic] conclusions concerning the materiality or revelance [sic] of a question, the question will be written down by Inspections and the employee will be given a reasonable time to respond in writing at a later date.

Conduct, which provides that "When directed to do so by Inspection or other competent Treasury or Revenue Service authority, employees must testify or respond to questions in matters of official interest. Employees must give such testimony, or respond to questions under oath when required or requested to do so."
Brief for Petitioner 7.

(3.) A bargaining unit employee will also have the right to grieve the question on the grounds of materiality and relevance through the negotiated grievance procedure. If the employee's position concerning the question is sustained any answer(s) obtained pursuant to (2) above shall be permanetly [sic] supressed [sic] and expunged from all IRS files and/or records.

J.A. 5–6.

The NTEU has intervened in this review proceeding by leave of court, *see* Fed.R. App.P. 15(d), and the FLRA has cross-petitioned for enforcement of its order. *See* 5 U.S.C. § 7123(b); Fed.R.App.P. 15(b).

## II. DECISION

The IRS invites our "full review" [13] and final disposition of objections to Proposals 10 and 11 detailed by the Service for the first time in its briefs to this court. The FLRA, on the other hand, asks us to disregard the specific objections the IRS now trains on Proposals 10 and 11 because they were not raised at any time before the Authority. We take a middle way, not only because the issues raised by the Union's proposals are important and likely to recur; of prime significance in our evaluation, a decision of the FLRA issued less than two months after the Authority's decision in the instant case appears to turn in an opposite direction and strongly suggests the need for a remand. *See American Federation of Government Employees, supra.* Absent clarification from the FLRA, doubt as to the path the Authority is following threatens to generate avoidable controversy.

12. Section 634.6(3) of the IRS Inspector's Handbook currently reads:

If an employee refuses to answer questions, he/she should not be asked what his/her reasons are since he/she has no right to refuse and his/her reasons are therefore immaterial.

Brief for Petitioner 8.

13. *See* Reply Brief for Petitioner 5–6 & n. 3.

## A. *The IRS Default*

The Service characterizes its performance before the FLRA as only "a possible technical default." Reply Brief for Petitioner 6 n. 3. We disagree.

Regulations governing proceedings before the FLRA instruct that the agency "[set] forth in full its position on any matters . . . it wishes the Authority to consider in reaching its decision, including a full and detailed statement of its reasons supporting . . . [an] allegation [of nonnegotiability]." 5 C.F.R. § 2424.6(a)(2). Despite this clear instruction, the IRS simply alleged generally, and without a line of discussion addressed to any individual proposal, that the NTEU's submissions conflicted with the Service's right to determine its internal security practices.[14] Nor did the IRS focus on any particular feature of its internal security practices to demonstrate why the NTEU's proposals involved more than the manner in

which employees would be notified of investigatory procedures. *See* Brief for the FLRA 18.

 In effect, the IRS asks us to serve routinely in petitions challenging FLRA decisions more as a tribunal of first view than as a court of review.[15] The Act commands otherwise: "No objection that has not been urged before the Authority . . . shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." 5 U.S.C. § 7123(c). Congress designated the FLRA as sole fact finder and first line decisionmaker in determining whether a proposal is negotiable under the Act;[16] it assigned to us a review function.[17] But we cannot *review* issues that an agency never placed before the Authority. If federal agencies generally operated before the FLRA as the IRS did in this case,[18] and we

---

**14.** *See, e.g.,* J.A. 15 (NTEU's proposals "are unquestionably directly related to the internal security practices of the IRS."); *id.* 16 ("[A]ny attempt by the NTEU to change the Inspector's Handbook is an attempt to change the internal security practices of the Agency."); *id.* 17 ("[A]ny proposals that try to change management's decisions with respect to the internal security practices of the Agency are improper, and must be declared non-negotiable.").

**15.** In its brief, the Service noted that two IRS attorneys faced twelve Union proposals before the Authority, while many IRS and Department of Justice attorneys, even the Solicitor General, participated in the decision to seek review; moreover, the brief prepared for this court pared the contest to only two of the twelve proposals. Reply Brief for Petitioner 4 n. 1. At oral argument, the court expressed grave concern about this mode of proceeding. The Department of Justice Civil Division Attorney who appeared for the IRS stated:

I'm afraid I've done a disservice to my client in writing too confident a brief on the question of whether the issues were properly raised. It is always of concern that issues be raised before agencies. We instruct agencies to do so. Here, the issues were raised in a lawyer-like fashion. In many agencies, the briefs prepared for the Authority are not even done by lawyers. This is unfortunate, but with the people that are available it's difficult to do an awful lot more.

We note that, in view of the cost and steeply uphill road petitioners for court review confront, the interest of "effective and efficient Government," *see* 5 U.S.C. § 7101(b), might be

**16.** 5 U.S.C. §§ 7105(a)(2)(E) & 7117; *see Library of Congress v. FLRA, supra* note 3, 699 F.2d at 1284–85 (negotiability determined in first instance by FLRA). The record is developed before the Authority, *see* 5 U.S.C. § 7117(c)(2)–(5), and a reasoned decision issues (*see* 5 U.S.C. § 7117(c)(6); *American Fed'n of Gov't Employees, Local 1968 v. FLRA, supra* note 7, 691 F.2d at 574 (FLRA "must articulate reasons for its decision.")), to which a court of review generally owes a considerable measure of respect. *See Library of Congress v. FLRA, supra* note 3, 699 F.2d at 1285 (FLRA's interpretation of its enabling legislation owed deference by reviewing court); *National Treasury Employees Union v. FLRA, supra* note 3, 691 F.2d at 558–59 (same); *Department of Defense v. FLRA, supra* note 3, 659 F.2d at 1161–62 & 1162 n. 121 (same); *National Fed'n of Fed. Employees, Local 1451 v. FLRA,* 652 F.2d 191, 193 (D.C.Cir.1981) (same).

**17.** *See* 5 U.S.C. § 7123(c); *id.* § 706; *National Fed'n of Fed. Employees, Local 1167 v. FLRA,* 681 F.2d 886, 889 n. 3 (D.C.Cir.1982) (standards for review of FLRA negotiability determinations).

**18.** We are disconcerted by the suggestion, *see supra* note 15, that the IRS's performance before the Authority, inadequate as it was, may have been better than standard agency practice.

generally entertained specific argument here in the first instance, the initial adjudicatory role Congress gave to the Authority would be transferred in large measure to this court, in plain departure from the statutory plan.

While we adhere to the main rule that an agency must specify critical inquiries before the FLRA if it wishes to pursue them on petition for court review, we explain below the extraordinary circumstance that warrants an exception in this case.

### B. The NTEU's Proposals and Recent FLRA Precedent

■ Proposal 11[19] calls for advice to an employee that he or she may avoid immediate response to a question upon determining for himself or herself that the question lacks relevance or materiality. If the interrogator disagrees, the question is to be reduced to writing and the employee allowed to furnish a written response at an unspecified later date. Ultimately, the propriety of the question could be settled by an arbitrator. Proposal 10[20] also entails a reference to "relevant and material" questions; it further requires advice on immunity to which the IRS has addressed less than crystalline argument.

Even without pinpointed objection, the FLRA might have discerned the potential of Proposal 11, particularly, to disrupt the course and transform the character of an interview. The spontaneous, concentrated, face-to-face interview contemplated by the IRS could be displaced in part by a written exchange, with delayed, tailored answers which could not be followed-up by on-the-

spot probing. Protraction of investigations appears inherent in the proposal.[21] The FLRA's apparent assumption that only "advice" and notification to employees were at stake,[22] we believe, bears a closer look.[23]

In view of the IRS's performance before the Authority, however, we would hesitate to return the case to the FLRA were it not for the decision, following on the heels of this one, but outside the Service's time to seek reconsideration, in *American Federation of Government Employees, supra* [the "*INS* case"].

In the *INS* case, the union's proposal stated:

> While employees may be required to furnish information relating to matters of employment [in] conflict-of-interest situations, no employee will be required to give a statement under oath except as may be required by law."

*Id.,* 8 FLRA at 361 (brackets in original). The FLRA held this proposal "not within the Agency's duty to bargain." *Id.* at 362. It reasoned:

> The Authority has determined that an agency's right to determine internal security practices under the Statute extends to the establishment of rules to prevent disruption of its operations, unwarranted disclosure of privileged information, and destruction of its property. In the opinion of the Authority, *the right to determine internal security practices also extends to the establishment of rules applicable to internal investigations relating to the integrity of an agency's operations* vis-a-vis actual or alleged conflicts

---

19. *See supra* p. 578.

20. *See supra* pp. 577–578.

21. At oral argument, counsel for the NTEU acknowledged that Proposal 11 would "change the nature of the investigation somewhat."

22. The FLRA characterized the union proposals as relating "to the manner in which employees are to be *notified* by Inspectors of certain procedures, privileges, and obligations in relation to an interrogation which could lead to disciplinary action." *National Treasury Employees Union, supra,* 8 FLRA at 136 (emphasis added).

23. One of the Act's declared purposes may be relevant in evaluating the IRS's position regarding Proposal 11:

> It is the purpose of this chapter . . . to establish procedures which are designed to meet the special requirements and needs of the Government. The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government.

5 U.S.C. § 7101(b).

of interest. In this connection, the Agency has stated that it has established a rule, in conducting investigations relating to the integrity of Agency operations, of requiring oaths to ensure obtaining truthful and reliable information in such circumstances. Thus, the Agency's decision to require oaths to ensure its obtaining truthful and reliable information in conducting investigations, which are the subject of this disputed proposal, is an internal security practice under section 7106(a)(1).

*Id.* (footnote omitted & emphasis added).

Limiting an agency's application of an established rule governing oral questioning in the manner indicated by NTEU's Proposal 11 may unsettle an agency's internal investigations far more than curtailing the use of oaths. In short, the FLRA's February 11, 1982, order in this case appears inharmonious with the Authority's April 6, 1982, decision that negotiation may be re-fused on oath-taking. But we withhold final judgment on the apparent incongruity in the Authority's decisions. The FLRA should carefully consider and explain its course before dispositive judicial review is essayed.[24]

## CONCLUSION

While we agree with the FLRA that objections not raised before the Authority should generally be disregarded on appeal, an "extraordinary circumstance" is presented here by the juxtaposition of the order on review and the order in the *INS* case.[25] In the interest of establishing stable precedent to guide federal agencies and the representatives of their employees, we deny the Authority's application for a judgment enforcing its order in full, set aside the order as it relates to Union Proposals 10 and 11,[26] and remand the case to the FLRA for reconsideration in light of the Authority's decision

**24.** *Cf. New York Div. of Military & Naval Affairs v. FLRA,* 696 F.2d 202, 204–05 (2d Cir. 1982) (remand ordered so that FLRA could consider consistency of its decision with a prior FLRA decision). It is not our intention to dictate the FLRA's decision on remand. We do not rule out the possibility that the Authority may demonstrate convincingly that its orders in this case and the *INS* case are harmonious. When the FLRA brings to bear its expert judgment on matters involving the Act specifically, and federal public sector labor relations generally, court review is deferential. *See supra* note 16; *cf. Department of Defense v. FLRA, supra* note 4, 685 F.2d at 651 (dissenting opinion) (no deference owed FLRA regarding matters outside its expertise).

**25.** In *Szewczuga v. NLRB,* 686 F.2d 962, 971–72 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983), a panel of this court held that an intervening *judicial decision* did not constitute an "extraordinary circumstance" within the meaning of section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (1976), and therefore did not supply cause for allowance on appeal of an argument not raised before or considered by the NLRB. Our concern here is different; it relates to the evenhanded declaration and application of the law by an administrative authority. Review of the reasonableness of an administrative adjudication includes consideration of the administrator's consistency in deciding similar cases. *See, e.g., Hatch v. FERC,* 654 F.2d 825, 834–35 (D.C.Cir.1981). An administrative decision need not fail the test of reasonableness solely because the administrative tribunal did not consider an argument later suggested by a court of appeals. But an administrative decision may be found arbitrary and capricious on judicial review if the administrator, without comprehensible explanation, adopts a rationale in subsequent cases that yields decisions contrary to the decision under review. *See, e.g., Cheshire Hospital v. New Hampshire-Vermont Hospitalization Serv.,* 689 F.2d 1112, 1126 (1st Cir.1982) ("[The Provider Reimbursement Review Board] cannot be permitted to apply one . . . rule in some cases, and a different . . . rule in other cases without acknowledging or explaining the inconsistency. Such an approach is clearly arbitrary and capricious.").

**26.** Our concern that the Authority decide like cases in a like manner has focused on Proposal 11. Were we viewing Proposal 10 in isolation, we might not be persuaded that "extraordinary circumstances" excuse the IRS's failure to be specific before the FLRA. However, the two proposals are related. Proposal 10 reinforces Proposal 11 by notifying employees that only the failure to answer "material and relevant" questions will have negative consequences. Proposal 11 backs up Proposal 10 by providing the mechanism for disputing the "materiality and relevance" of investigatory questions. Because the two proposals are, in part, interdependent, we believe that, on remand, the FLRA should have the opportunity to address both.

in the *INS* case and the more focused positions of the IRS and the NTEU indicated in the briefs they filed in this court.

*It is so ordered.*