716 F.2d 52
 230 U.S.App.D.C. 248
 CAROLINA POWER & LIGHT COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
North Carolina Electric Membership Corporation, et al.,
ElectriCities of North Carolina, et al., Public
Works Commission of the City of
Fayetteville, North Carolina,
Intervenors.
CAROLINA POWER & LIGHT COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
ElectriCities of North Carolina, et al., North Carolina
Electric Membership Corporation, et al., Public
Works Commission of the City of
Fayetteville, North Carolina,
Intervenors.
 Nos. 82-1442, 82-1567.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 15, 1983.
Decided Aug. 26, 1983.
 
 Robert T. Hall, III, Washington, D.C., with whom Richard M. Merriman and Floyd L. Norton, IV, Washington, D.C., were on the brief, for petitioner.
 Joseph S. Davies, Jr., Atty., F.E.R.C., Washington, D.C., with whom Jerome M. Feit, Atty., F.E.R.C., Washington, D.C., was on the brief, for respondent.
 Marc R. Poirier, Washington, D.C., with whom James N. Horwood, Gearold L. Knowles, Patricia D. Ryan, Washington, D.C., and Thomas J. Bolch, Raleigh, N.C., were on the joint brief, for intervenors, ElectriCities of North Carolina, et al. David R. Straus, Washington, D.C., also entered an appearance for intervenors.
 Before TAMM and GINSBURG, Circuit Judges, and JOHN W. PECK,* Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit.
 Opinion for the Court filed by Senior Circuit Judge JOHN W. PECK.
 JOHN W. PECK, Senior Circuit Judge:
 
 
 1
 The Carolina Power & Light Company (Carolina Power) seeks review of a Federal Energy Regulatory Commission (FERC or Commission) decision denying the utility's request for a change in its rate schedule. Carolina Power sought to include as a cost expenses associated with the permanent disposal of spent nuclear fuel used by its nuclear generating facilities to produce electricity. In Opinion No. 132 FERC denied Carolina Power's request.[1] A subsequent petition for rehearing was also denied.[2] Carolina Power appealed both decisions to this court.[3]
 
 
 2
 Carolina Power is a large wholesaler and retailer of electricity with a service area of 30,000 square miles located in eastern and central North Carolina, and the northeastern portion of South Carolina. At the end of 1976 Carolina Power had a generating capacity of some 6,878,000 kilowatts.
 
 
 3
 Joining the national trend among large utilities, Carolina Power had invested substantial funds towards the development of nuclear plants, believing that nuclear generation of electricity would eventually be cheaper and more efficient than traditional methods. By early 1977 approximately 22% of the utility's generating capacity was derived from nuclear generating facilities.[4]
 
 
 4
 Carolina Power's nuclear plants were powered through the use of nuclear fuel consisting of large fuel assemblies of stainless steel or zirconium alloy tubing containing enriched uranium. When the elements in the fuel assemblies were allowed to interact, heat and electricity were produced. After a period of time, however, the fuel assemblies become ineffective as the uranium is "poisoned" by the bombardment of other metals. As a result, the uranium loses its ability to sustain the nuclear chain reaction and the production of electricity slows. At this point the spent nuclear fuel must be replaced with new, fresh nuclear fuel to sustain the production of electricity. The replacement process must occur several times a year. Initially most operators of nuclear generating facilities believed so-called spent nuclear fuel could be revitalized or reprocessed. This process extracts useable fissionable material from spent nuclear fuel and fabricates them into fresh fuel assemblies. As a result, spent nuclear fuel was stored temporarily in anticipation of being reprocessed, and it was considered an asset by electric utilities and assigned a positive salvage value.
 
 
 5
 As time progressed, however, difficulties with reprocessing became evident. In April, 1977, President Carter, in a policy statement on reprocessing halted indefinitely commercial development of reprocessing facilities, citing the proliferation of plutonium, a by-product of the process, as a major concern. At the same time hearings before the Nuclear Regulatory Commission on the feasibility of commercial reprocessing and its impact on the environment were terminated indefinitely. This action foreclosed the possibility of licensing the Barnwell, South Carolina facility for the foreseeable future. By the summer of 1977 no reprocessing facility was operating in the United States, and none had been licensed.
 
 
 6
 Determining that reprocessing was no longer a viable option, Carolina Power filed with FERC revised tariff sheets to its Electric Tariff seeking to include costs associated with permanently disposing of its accumulated nuclear fuel. Specifically, the utility amortized its accumulated positive salvage value of $5,038,150 over five years. Carolina Power also added approximately $14,000,000 for costs associated with the permanent disposal of its accumulated spent nuclear fuel during its twelve-month test period ending July 31, 1977, calculating such cost at $114 per kilogram of spent nuclear fuel. Invoking its fuel adjustment clause on the ground that the costs were obvious and inevitable, Carolina Power immediately included the added costs in rates charged its customers.[5] An immediate protest was filed and various wholesale and retail customers of Carolina Power sought to intervene in the proceeding.[6]
 
 
 7
 At the hearing various witnesses for Carolina Power and FERC, as well as for Intervenors, testified on the foreseeability of reprocessing as a viable alternative to permanent disposal of spent nuclear fuel. For instance, Michael J. Lawrence and Dr. Thomas S. Elleman, testifying for Intervenors, stated that reprocessing was still a possibility, but that there was little chance it would begin until the 1990's at the earliest. A Department of Energy study introduced at the hearing stated that the cost of permanently disposing of spent nuclear fuel would be approximately $100 to $250 per kilogram. Staff experts, testifying for FERC, declared that reprocessing was foreseeable, but that it would not begin until the 1990's.
 
 
 8
 R.A. Watson, Manager of Carolina Power's Fuel Department, stated that reprocessing was an outside possibility but that it would take years for reprocessing plants, even if they began operation, to catch up with the annual production of spent nuclear fuel, let alone begin reprocessing the tremendous backlog of spent nuclear fuel already accumulated by nuclear generating facilities all over the country. In time the valuable fissionable material in spent nuclear fuel decays. As a result the potential salvage value of the spent nuclear fuel swiftly declines. If and when reprocessing facilities begin operation, recently produced spent nuclear fuel would be processed first. It is highly unlikely, therefore, that Carolina Power's aging spent nuclear fuel at issue would ever be reprocessed.
 
 
 9
 After carefully weighing the evidence presented, the ALJ allowed Carolina Power to amortize, over five years, the accumulated positive salvage value it had incorporated in its rate base. He further granted Carolina Power's request for approximately $14,000,000 for costs associated with permanent disposal of spent nuclear fuel, stating that the uncertainty over whether reprocessing is a possibility was not sufficient to justify additional delay in charging present customers for the benefits they derive from nuclear production of electricity.
 
 
 10
 On review, FERC agreed with the ALJ that Carolina Power could amortize the positive salvage value of spent nuclear fuel, but refused to allow Carolina Power to pass on costs associated with permanent disposal.[7] In Opinion No. 132, released November 5, 1981, FERC stated that Carolina Power had failed to present enough evidence that costs would be incurred associated with permanent disposal of its spent nuclear fuel since reprocessing was a reasonably foreseeable possibility. FERC declared that it would allow costs associated with interim storage of spent nuclear fuel, as it had done in the recent VEPCO case, but that Carolina Power had failed to demonstrate such costs. Virginia Electric & Power Co., ("VEPCO ") Opinion No. 118, 15 FERC p 61,052 (April 10, 1981).
 
 
 11
 In its petition for rehearing, filed December 4, 1981, Carolina Power made two arguments. First, it argued that FERC had failed to consider that backlogging of spent nuclear fuel would preclude reprocessing of this particular accumulated spent nuclear fuel. Alternatively, it argued that FERC, without explanation, had altered the burden of proof necessary to show costs associated with disposal of nuclear fuel. Carolina Power, which at the time of the hearing had been unaware of the distinction between interim and permanent disposal costs, first announced in VEPCO, contended that FERC's decision ran counter to the philosophy of the Federal Power Act and the decision in VEPCO requiring intergenerational payments of costs connected with nuclear fuel. Given the unforeseeability of reprocessing, Carolina Power contended that present customers, benefitting from generation of electricity through nuclear plants, should bear their share of the costs, including costs associated with permanent disposal of spent nuclear fuel.
 
 
 12
 In Opinion No. 132-A, issued March 8, 1982, FERC denied rehearing. It held that it had properly applied the philosophy of VEPCO and that Carolina Power had an adequate opportunity to demonstrate costs.[8] In addressing arguments on the likelihood of reprocessing Carolina Power's accumulated spent nuclear fuel, FERC stated only: "CP & L [Carolina Power] has presented in its rehearing application no matters of fact or law not previously considered by the Commission." Record at 5487.
 
 
 13
 On appeal to this court, Carolina Power raises a number of arguments for remand, including the contention that there was not substantial evidence in the record to support FERC's holding that reprocessing was reasonably likely and that accrual of permanent disposal costs was uncertain. In its petition for rehearing, Carolina Power argued that reprocessing its accumulated spent nuclear fuel was extremely unlikely, given the tremendous national backlog.[9] In response, as expressed in its denial of rehearing, FERC stated only that the proffered grounds did not justify rehearing the case.
 
 
 14
 It is hornbook law that an agency must set forth clearly the basis of reaching its decision. SEC v. Chenery Corp. (Chenery II), 332 U.S. 194, 196-97, 67 S.Ct. 1575, 1577-78, 91 L.Ed. 1995 (1947); Village of Winnetka, Ill. v. FERC, 678 F.2d 354, 357 (D.C.Cir.1982). This is especially true in a complex rate dispute where the expertise of an agency is extremely valuable. FPC v. United Gas Pipe Line Co., 393 U.S. 71, 73, 89 S.Ct. 55, 56, 21 L.Ed.2d 55 (1968); Village of Winnetka, Ill., supra. Without such a clear presentation of its reasoning, it is difficult, if not impossible, for a court to intelligently perform its assigned reviewing function and to discern the path taken by an agency in reaching its decision. SEC v. Chenery, supra; Village of Winnetka, Ill., supra. In this case, there is no question FERC failed to meet this requirement. In conclusory language FERC dismissed the arguments relevant to the reprocessing issue and totally failed to mention the backlog argument. Moreover, FERC failed to state whether it altered its initial conclusion in Opinion No. 132 that reprocessing was reasonably foreseeable.[10]
 
 
 15
 Given these facts, we are constrained to remand this case to the agency for an analysis of whether the effect of the tremendous backlog of spent nuclear fuel already accumulated by nuclear generating facilities across the country will alter its decision on the foreseeability that Carolina Power's inventory of spent nuclear fuel at issue in this case will be reprocessed. We think a remand is essential to answer this highly technical question and utilize the expertise of FERC in resolving this question in the first instance. United Gas Pipe Line Co., supra; Villages of Chatham & Riverton, Ill. v. FERC, 662 F.2d 23 (D.C.Cir.1981).
 
 
 16
 Our decision to remand is bolstered in part by FERC's apparent reversal in its stance on the issues raised in this appeal. Boston Edison Co., 18 FERC p 63,059 (March 5, 1982). In Boston Edison, a decision issued three days before the denial of rehearing in Opinion No. 132-A involving a rate making dispute similar to the case at bar, FERC allowed a utility to include costs associated with permanent disposal of spent nuclear fuel in rates charged its customers. In light of this apparent inconsistency, a clear explanation by FERC of reasons it views as important in denying similar treatment to Carolina Power, including the effect of backlogging on possible reprocessing, are especially important. Dept. of the Treasury v. Federal Labor Relations Authority, 707 F.2d 574 at 580-581 (D.C.Cir.1983); Hatch v. FERC, 654 F.2d 825, 834-35 (D.C.Cir.1981); Columbia Gas Transmission Corp. v. FERC, 628 F.2d 578, 586 (D.C.Cir.1979).
 
 
 17
 For the above reasons, we remand this case to the agency for disposition consistent with this opinion.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d) (1976)
 
 
 [1]
 17 FERC p 61,118 (Nov. 5, 1981)
 
 
 [2]
 Opinion No. 132-A, 18 FERC p 61,234 (March 8, 1982)
 
 
 [3]
 Carolina Power initially appealed Opinion No. 132 in case number 82-1442 and FERC's denial of rehearing in case number 82-1567. The cases were consolidated for purposes of appeal
 
 
 [4]
 This percentage does not include the utility's Brunswick nuclear plant which came on-line in March, 1977
 
 
 [5]
 ER77-485 filed June 29, 1977
 
 
 [6]
 North Carolina Electric Membership Corp. and Four County Electric Membership Corp.; and ElectriCities of North Carolina and Cities of Bennettsville and Camden, South Carolina (Intervenors) filed a Complaint, Petition for Declaratory Order, and for Order Directing Refund of Illegal Overcharges Under Fuel Adjustment Clause in Docket No. E-9606, wherein the Intervenors raised a procedural issue concerning the Company's recovery of spent nuclear fuel costs from May, 1977 until December 29, 1977, when the rates filed in Docket No. ER77-485 became effective subject to refund. The Intervenors requested, inter alia, that the Company be required to refund, with interest, all amounts collected under the fuel adjustment clause for spent nuclear fuel storage and disposal during that time period. The city of Fayetteville, North Carolina was allowed to intervene after withdrawing from ElectriCities. By order issued October 30, 1980, the Commission consolidated Docket No. E-9606 with Docket No. ER77-485, thereby consolidating the procedural and substantive issues concerning the Company's recovery of spent nuclear fuel costs
 
 
 [7]
 The Commission also held Carolina Power had improperly used its fuel adjustment clause to immediately charge its wholesale customers these additional costs. This issue was not appealed
 
 
 [8]
 The Commission stated that Carolina Power had adequate storage facilities at its nuclear plant for interim storage, and that the utility was already including costs associated with such storage in its rates charged to customers
 
 
 [9]
 There is no question Carolina Power preserved this argument for appeal, even though it was not included in its initial brief filed after the ALJ's decision. The question was strenuously argued before the ALJ, particularly through the testimony of Watson. Since Carolina Power prevailed on this issue before the ALJ, there was no reason to raise the matter on appeal. This court has held several times that an argument is preserved for appeal if it is raised in the petition for rehearing as was plainly done here. See Villages of Chatham & Riverton, Ill. v. FERC, 662 F.2d 23, 30 (D.C.Cir.1981) (language of Federal Power Act, 16 U.S.C. Sec. 8251(b), permits a party to preserve argument for appeal in his application for rehearing); Belco Petroleum Corp. v. FERC, 589 F.2d 680, 683 (D.C.Cir.1978) (similar treatment under analogous provision of Natural Gas Act); Rhode Island Consumers' Council v. FPC, 504 F.2d 203 (D.C.Cir.1974) (same)
 
 
 [10]
 At oral argument counsel for FERC conceded that the agency had neglected to address the backlog argument in either Opinion No. 132 or in its denial of rehearing in Opinion No. 132-A