AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LO-CAL 3748, AFL–CIO, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LO-CAL 3365, AFL–CIO, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

Nos. 85–2472, 85–2473.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1985.

Decided July 23, 1986.

Kevin M. Grile, Northfield, Ill., for petitioner.

Jill A. Griffin, Washington, D.C., for respondent.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

This case [1] concerns a federal agency's duty to bargain under the Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–7135 (1982 & Supp. II 1984) (the "Act"),[2] concerning the promulgation of performance standards [3] for federal civil service employees. The Federal Labor Relations Authority held that in a proposed collective bargaining agreement, language requiring performance standards to be "fair, objective, job-related and measurable," was outside management's statutory duty to bargain.[4] For the reasons discussed below, we affirm.

## I. BACKGROUND.

The Federal Labor Relations Authority, established in 1978 as an independent agency within the Executive Branch,[5] administers the Act in a role similar to that of the National Labor Relations Board in the private sector.

---

1. Two cases with a common issue were consolidated before the Federal Labor Relations Authority.

2. The Federal Service Labor-Management Relations Act was enacted as Title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1191 (1978) (hereinafter cited as codified).

3. As defined by the Office of Personnel Management, a performance standard is "a statement of the expectations or requirements established by management for a critical or non-critical element at a particular rating level. A performance standard may include, but is not limited to,

factors such as quality, quantity, timeliness, and manner of performance." 5 C.F.R. § 430.203 (1986). Similarly, a critical element is "a component of a job consisting of one or more duties and responsibilities which contributes toward accomplishing organizational goals and objectives and which is of such importance that 'Unacceptable' performance on the element would result in 'Unacceptable' performance of assigned work." *Id.*

4. *AFGE, Local 3748 and Agricultural Research Service and AFGE, Local 3365 and Department of Agriculture,* 20 FLRA 495 (1985).

5. *See* 5 U.S.C. § 7104.

This case concerns primarily the interpretation of section 7106 of the Act, entitled "Management rights." Section 7106(a) sets out nonnegotiable management rights and states in pertinent part:

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

\* \* \* \* \* \*

(2) in accordance with applicable laws—
(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
(B) to assign work \* \* \* and to determine the personnel by which agency operations shall be conducted \* \* \*.[6]

Subsection (a) is by its express terms subject to subsection (b), which provides in pertinent part:

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

\* \* \* \* \* \*

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or
(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.[7]

The issue before us arose during negotiations on collective bargaining agreements involving two locals of the American Federation of Government Employees, AFL–CIO (AFGE) and the United States Department of Agriculture (USDA). The AFGE locals

and the USDA reached separate agreements which they submitted to the USDA Office of Personnel for approval pursuant to 5 U.S.C. § 7114(c).[8] The agreement reached by AFGE Local 3748 and the USDA contained the following provision:

Article 16, Section 2. Supervisors will encourage employee participation in the establishment of performance standards. *Performance Standards will be fair, objective, job-related, and measurable.* The application of Performance Standards and the determination of acceptable level of competence will both be made in a fair and objective manner. Factors beyond the control of employees will not be used to evaluate performance. The employee will be rated on these elements and not on representational activities.[9] (emphasis added).

The agreement reached by AFGE Local 3365 and the USDA contained the following provision:

Article 13, Section 6. *Standards used for measurement of performance for critical elements of the job will be fair, objective and job related.* When considering complaints of enrollees in evaluating the performance of an Employee, those complaints must be determined to be valid and reliable before such complaints would adversely affect the Employee's evaluation.[10] (emphasis added).

The USDA Office of Personnel declined to approve the underscored sentences in the agreements on the grounds that the language fell within the scope of section 7106(a) and was thus nonnegotiable as a matter of law.

AFGE Locals 3748 and 3365 appealed [11] to the Authority,[12] which upheld the nonne-

---

6. 5 U.S.C. § 7106(a).

7. 5 U.S.C. § 7106(b).

8. This section provides that agreements between an agency and a union's exclusive bargaining representative shall be subject to approval by the head of the agency.

9. *AFGE, Local 3748 and Agricultural Research Service and AFGE, Local 3365 and Department of Agriculture,* 20 FLRA 495, 496 (1985).

10. *Id.*

11. *See* 5 U.S.C. § 7117(c)(1).

12. The Federal Labor Relations Authority, acting in its capacity as a party, is referred to as "FLRA" and acting in its capacity as a tribunal, as "Authority."

gotiability of the disputed sentences, and the Union brought this appeal.[13]

## II. STANDARD OF REVIEW.

We begin by considering the appropriate standard of review. Section 7123 of the Act provides that review of an order of the Authority shall be conducted on the record in accordance with section 706 of the Administrative Procedure Act,[14] which requires the reviewing court to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[15] We must, however, give deference to the agency,[16] and to sustain its application of a statutory term, "we need not find that its construction is the only reasonable one, or even that it is the result we would have reached * * * in the first instance * * *."[17] Instead, we should adopt the agency's interpretation if it is reasonably defensible[18] and there is no compelling indication of error.[19] We must not, however, "rubber-stamp * * * administrative decisions that [we] deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute."[20]

## III. DISCUSSION.

On appeal the Union contends that the disputed language does not infringe upon management's right to "direct employees" under section 7106(a)(2)(A) and to "assign work" under section 7106(a)(2)(B). The Union argues that section 7106 places no explicit restrictions on the negotiability of performance standards and that in any event the disputed sentences address the application, not the content, of performance standards.

The FLRA responds by echoing the Authority's finding below that the disputed provisions would substantially interfere with management's exclusive right to assign work and direct employees. The FLRA cites *NTEU v. FLRA* for the proposition that "the right to determine what work will be done, and by whom and when it is to be done, is at the very core of successful management of the employer's business * * *."[21] The FLRA argues that management exercises this right through the formulation of performance standards.

For purposes of our analysis, it will be useful to examine Authority precedent in this area. The Authority has consistently drawn a line between language concerning the application of performance standards and language concerning the content of performance standards.[22] The Authority has established that language concerning application is negotiable[23] and that lan-

---

**13.** The jurisdiction of this court is invoked pursuant to 5 U.S.C. § 7123.

**14.** *See* 5 U.S.C. § 7123(c).

**15.** 5 U.S.C. § 706(2)(A) (1966).

**16.** The Supreme Court has noted that "the Authority is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted).

**17.** *Unemployment Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946).

**18.** *Department of Defense v. FLRA,* 659 F.2d 1140, 1162 n. 121 (D.C.Cir.1981), *cert. denied sub nom. AFGE v. FLRA,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

**19.** *Department of Defense v. FLRA,* 659 F.2d at 1161; *see also NLRB v. Hendricks County Rural*

*Electric Corp.,* 454 U.S. 170, 177, 102 S.Ct. 216, 222, 70 L.Ed.2d 323 (1981).

**20.** *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted).

**21.** *NTEU v. FLRA,* 691 F.2d 553, 563 (D.C.Cir. 1982).

**22.** The Authority's consistent division between language concerning application and language concerning content effectively disposes of the Union's argument set forth at pp. 38–45 of its brief that the Authority's approach to this issue has been "irrational" and "without reasoned explanation" and thus mandates reversal.

**23.** *American Federation of State, County and Municipal Employees, Locals 2477 and 2910 and Library of Congress,* 17 FLRA 786 (1985); *AFGE, Local 3804 and FDIC,* 7 FLRA 217 (1981); *AFGE, Local 3656 and FTC,* 4 FLRA 702 (1980); *AFGE, Local 32 and OPM,* 3 FLRA 784 (1980).

guage concerning content is outside management's duty to bargain.[24]

■ In *AFGE, Local 32 and OPM*, the Authority explained the distinction as follows:

The Authority has consistently found proposals which substantively restrict management in its establishment of performance standards to be outside the duty to bargain as interfering with management's rights to assign work and direct employees under section 7106(a)(2)(A) and (B) of the Statute. [citations omitted] The Authority has also found that a proposal which would have as its sole effect the subjecting of management's determination concerning the content of performance standards to the grievance procedure and arbitral review similarly constituted a substantive interference with management's rights. [citations omitted]. However, in [*AFGE, Local 32 and OPM*, 3 FLRA 784 (1980)], * * * finding [a different] proposal to be within the duty to bargain, the Authority specifically noted that such an arrangement did not affect management's discretion to determine the content of performance standards nor authorize an arbitrator to substitute his or her judgment for that of management as to the content of the standards.[25]

In the instant case the Authority found, and we agree, that "the disputed language in each of the provisions would have the net effect of permitting arbitral review of management's determination of the content of performance standards * * *. [I]t is clear that they address only the content of performance standards rather than [their] application * * *."[26] We note that as to Local 3748, the plain language of the Union's proposal belies its claim of addressing only the application of performance standards. The disputed sentence, which reads: "Performance Standards will be fair, objective, job-related, and measurable," is so broad as to encompass the content of performance standards. To see the impermissible breadth of this sentence, one need only to compare it with the next sentence of the Union's proposal, which explicitly addresses the application of performance standards: *"The application* of Performance Standards and the determination of acceptable level of competence will both be made in a fair and objective manner"[27] (emphasis added).

■ The provision that Local 3365 proposes: "Standards used for measurement of performance for critical elements of the job will be fair, objective and job related" similarly infringes upon management rights. The sentence immediately following the one in dispute reads: "When considering complaints of enrollees in evaluating the performance of an Employee, those complaints must be determined to be valid and reliable before such complaints would adversely affect the Employee's evaluation."[28] Here too only the latter sentence addresses the fair application of performance standards, as contrasted with their content.

The Union raises some additional contentions which we now address. The Union first points to 5 U.S.C. § 4302,[29] which mandates the establishment of perform-

---

**24.** *AFGE, Local 32 and OPM*, 16 FLRA 948 (1984), *petition for review filed sub nom. Local 32, AFGE v. FLRA*, No. 85–1038 (D.C.Cir.1985); *AFGE, Local 1395 and SSA*, 14 FLRA 409 (1984); *AFGE, Local 1968 and Department of Transportation*, 5 FLRA 70 (1981), *aff'd sub nom. AFGE, Local 1968 v. FLRA*, 691 F.2d 565 (D.C.Cir.1982), *cert. denied*, 461 U.S. 926, 103 C.St. 2085, 77 L.Ed.2d 297 (1983); *NTEU and Department of the Treasury*, 3 FLRA 769 (1980), *aff'd sub nom. NTEU v. FLRA*, 691 F.2d 553 (D.C.Cir.1982).

**25.** *AFGE, Local 32 and OPM*, 16 FLRA 948, 950 (1984).

**26.** *AFGE, Local 3748 and Agricultural Research Service and AFGE, Local 3365 and Department of Agriculture*, 20 FLRA 495, 496 (1985).

**27.** *See supra* notes 8 & 9 and accompanying text.

**28.** *See supra* notes 8–10 and accompanying text.

**29.** This section is part of 5 U.S.C. Chapter 43, Pub.L. No. 95–454, tit. II, § 203(a), 92 Stat. 1131 (1978). Its function is to regulate performance appraisals in the federal service.

ance appraisal systems.[30] The Union argues that because section 4302(a)(2) requires an agency to "encourage employee participation in establishing performance standards," section 7106(a) was therefore not intended to make performance standards nonnegotiable.

■ To the contrary, we read section 4302(a)(2) as supporting nonnegotiability of performance standards. By using the precatory term "encourage," rather than a stronger, mandatory word such as "require," the section allows employees to contribute ideas that management may accept or reject. Our reasoning is supported by the definition of performance standard: " '*Performance standard*' means a statement of the expectations or requirements *established by management* for a critical or non-critical element at a particular rating level."[31] (emphasis added). Our view is also consistent with the legislative history, which states that "section [4302] specifically encourages employee participation in establishing performance objectives. * * * Management will have the ultimate responsibility under this section, however, to establish the performance standards."[32] Finally, Chapter 43 provides no means for employee involvement in establishing performance standards, nor does Chapter 43 suggest that employees may negotiate over the content of performance standards. We therefore decline to read section 4302(a)(2) as sufficient to override section 7106.

■ The Union also contends that the disputed sentences follow section 4302(b)(1), which states that "performance standards * * * will, to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria * * * related to the job in question * * *."[33] Because section 4302 is an "applicable law" to which section 7106 must conform,[34] the Union argues that section 4302(b) requires management to negotiate the disputed provisions. We disagree. The disputed sentences in the Union proposals impose a restriction upon management rights that is different in substance from the requirement in section 4302(b)(1) that performance standards permit objectively based and accurate evaluation. As the FLRA points out in its brief:

arbitrators may take widely differing views of whether on issuance a given performance standard is "fair" or "measurable," quite apart from the question of whether the performance standard is lawful. Such general, subjective criteria for judging the validity of a performance standard, which could result in an arbitrator reaching a different conclusion as to the propriety of a standard than did the agency, is the kind of impingement on management's rights to assign work and direct employees which has resulted in findings of nonnegotiability under established Authority and judicial precedent * * *.[35]

We agree with the FLRA's reasoning and find it equally persuasive as applied to

**30.** 5 U.S.C. § 4302 states in pertinent part:

(a) Each agency shall develop one or more performance appraisal systems which—
(1) provide for periodic appraisals of job performance of employees;
(2) encourage employee participation in establishing performance standards; and
(3) use the results of performance appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, and removing employees;
(b) Under regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for—
(1) establishing performance standards which will, to the maximum extent feasible, permit the accurate evaluation of job per-

formance on the basis of objective criteria * * * related to the job in question for each employee or position under the system * * *.

**31.** 5 C.F.R. § 430.203 (1986).

**32.** S.Rep. No. 95–969, 95th Cong., 2d Sess. 41 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, 2763.

**33.** 5 U.S.C. § 4302(b)(1).

**34.** The introductory language to 5 U.S.C. § 7106(a)(2) states that management's right to direct employees and assign work must be "in accordance with applicable laws."

**35.** Brief for the FLRA at 21.

bargaining between the employer and the Union. To allow the Union to negotiate over the meaning of such a broad and subjective term as "fair," for example, would effectively open the door to bargaining over any aspect of performance standards. Contradicting their expressed wish to affect only the application of performance standards, the Union is attempting to gain a foothold in territory that is management's exclusively, *i.e.*, fashioning the content of performance standards. To allow the Union this foothold would skew the balance that Congress created between labor and management and would, more importantly, contravene explicit congressional intent. As Representative Udall stated, the Act was intended "to meet some of the legitimate concerns of the Federal employee unions as an integral part of what is basically a bill to give management the power to manage and the flexibility that it needs."[36] The Union's proposal would strip management of much of this power.

■ The Union next argues that section 7106(b)(3) is applicable because the disputed provisions are in fact "appropriate arrangements for employees adversely affected by the exercise of any authority under this section by * * * management officials."[37] In *Department of Defense v.*

*FLRA,* the D.C. Circuit noted that "[t]he language of Section 7106 thus seems to establish a hierarchy, in which the terms of subsection (b) hold priority over those of subsection (a)."[38] The Union argues that a finding of nonnegotiability under section 7106(a) does not preclude negotiability under 7106(b). The FLRA responds that the Union is procedurally barred from raising this issue because they failed to raise it in the first instance before the Authority.[39] After having carefully reviewed the entire record, we conclude that the Union failed to raise this issue before the Authority. This would end our inquiry into the matter, but the Union contends that the Authority's recent decision in *Kansas Army National Guard*[40] changes law that the Authority used to decide this case and thus permits appellate review despite the failure to have raised the matter in the administrative process.[41] We conclude that the recent shift in the Authority's position in *Kansas Army National Guard* fails to create an "extraordinary circumstance" necessary to save the Union from the denial of review otherwise warranted by 5 U.S.C. § 7123(c).[42] The Authority's position in *Kansas Army National Guard* follows federal precedent in effect when this case arose.[43] The Union was therefore not precluded

---

**36.** 124 Cong.Rec. H9633 (daily ed. Sept. 13, 1978).

**37.** 5 U.S.C. § 7106(b)(3).

**38.** *Department of Defense v. FLRA,* 659 F.2d 1140, 1153 (D.C.Cir.1981), *cert. denied sub nom. AFGE v. FLRA,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). *See also National Assoc. of Gov't Employees, Local R 14–87 and Kansas Army National Guard,* 21 FLRA 24, 31 (1986), in which the Authority stated: "In this and future cases where the Authority addresses a management allegation that a union proposal of appropriate arrangements is nonnegotiable because it conflicts with management rights described in section 7106(a) or (b)(1), the Authority will consider whether such an arrangement is appropriate for negotiation within the meaning of section 7106(b)(3) or, whether it is inappropriate because it excessively interferes with the exercise of management's rights."

**39.** The FLRA cites 5 U.S.C. § 7123(c) which provides, in pertinent part: "No objection that has not been urged before the Authority, or its des-

ignee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." *See also Rogers v. Masem,* 788 F.2d 1288, 1292 (8th Cir.1986) ("Our general rule is that we do not consider issues not raised in the courts below * * * [absent a reason for the] tardiness in raising the issue * * * ").

**40.** *See supra* note 38.

**41.** *Department of the Treasury v. FLRA,* 707 F.2d 574, 580–82 (D.C.Cir.1983); *RMI Co. v. Secretary of Labor,* 594 F.2d 566, 574 (6th Cir.1979); *NLRB v. Robin American Corp.,* 667 F.2d 1170, 1171 (5th Cir.1982).

**42.** *See supra* note 39.

**43.** *AFGE, Local 2782 v. FLRA,* 702 F.2d 1183 (D.C.Cir.1983), *reversing and remanding AFGE, Local 2782 and Department of Commerce, Bureau of the Census,* 7 FLRA 91 (1981); *Department of Defense v. FLRA,* 659 F.2d 1140 (D.C. Cir.1981), *cert. denied sub nom. AFGE v. FLRA,*

from arguing the applicability of section 7106(b)(3) before the Authority, and its failure to do so cannot be excused.

Thus we hold that language in a collective bargaining agreement requiring performance standards to be "fair," "objective," "job-related," or "measurable" is nonnegotiable, as it falls within management's exclusive right to assign work and direct employees pursuant to section 7106(a)(2)(A) and (B) of the Act.

We repeat that in reviewing the Authority's application of the Act to this case, we need only find that its action was neither arbitrary, capricious, abusive of discretion nor contrary to law.[44] The Authority's holding clearly meets this test. We do not, however, reach the issue of negotiability of the questioned language of the proposed collective bargaining agreements under section 7106(b)(3).

Accordingly, the decision of the Authority is affirmed.

455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

**44.** *See supra* notes 14–20 and accompanying text.