**LOCAL 32, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**NATIONAL FEDERATION OF FEDERAL EMPLOYEES, LOCAL 29, Petitioner**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

Nos. 84–1250, 84–1578.

United States Court of Appeals, District of Columbia Circuit.

Argued May 29, 1985.

Decided Oct. 11, 1985.

Patrick Riley, Washington, D.C., with whom H. Stephen Gordon, was on brief for petitioner in 84–1578. Phillip R. Kete, Washington, D.C., was on brief for petitioner in 84–1250.

Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., with whom Ruth E. Peters, Sol., Federal Labor Relations Authority, and Pamela P. Johnson, Atty., Federal Labor Relations Authority, Washington, D.C., were on briefs, for respondent.

Before GINSBURG and BORK, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

In these consolidated cases, we review two orders entered by the Federal Labor Relations Authority ("FLRA" or "Authority") which held that proposals defining the competitive area for Reduction-in-Force ("RIF") implementation purposes were not within the government agencies' duty to bargain because the proposals would affect

both bargaining unit and non-bargaining unit employees. Because the FLRA has held, in another relevant case, that proposals defining the competitive area for RIFs are mandatory subjects for bargaining, we vacate the Authority's orders and direct the Authority to assess candidly and reconcile the apparent inconsistencies in these cases.

## I. BACKGROUND

### A. *No. 84–1250*

During collective bargaining negotiations between Local 32, American Federation of Government Employees, AFL–CIO ("Union" or "Local 32") and the Office of Personnel Management ("Agency" or "OPM"), the Union proposed that the competitive area within the Agency for RIF purposes would be the Washington Metropolitan Area.[1] A "competitive area" is the part of an agency within which an employee who occupied an abolished position may compete with other employees to determine which of them will be retained in the agency.[2] A RIF occurs when an agency:

> [R]eleases a competing employee from his/her competitive level by separation demotion, furlough for more than 30 days, or reassignment requiring displace-

ment, when the release is required because of lack of work, shortage of funds, reorganization, reclassification due to change in duties, or the exercise of reemployment rights or restoration rights. 5 C.F.R. § 351.201(a) (1983).

OPM, in response to this proposal, stated that it considered the provision to be outside the scope of mandatory bargaining. Appendix ("App."), No. 84–1250, at 8. Pursuant to the governing statute,[3] the Union sought review by the FLRA. App., No. 84–1250, at 7.

The Authority found the proposal non-negotiable, noting that the Union admitted that the proposed competitive area would encompass non-bargaining unit employees in addition to bargaining unit employees, *American Federation of Government Employees, Local 32, AFL–CIO and Office of Personnel Management ("Local 32")*, 14 FLRA 754, 754 (1984), and holding that the duty to bargain does not extend to matters concerning positions and employees outside the bargaining unit. *Id.*

### B. *No. 84–1578*

The negotiability dispute in this case began with two proposals submitted by the

---

1. The Union's proposal read as follows: "The Competitive Area shall be the Washington Metropolitan Area." Appendix ("App."), No. 84–1250, at 8.

2. *International Federation of Professional and Technical Engineers, AFL–CIO, NASA Headquarters Professional Association and National Aeronautics and Space Administration, Headquarters, Washington, D.C.*, 8 FLRA 212, 213 (1982).

3. The Civil Service Reform Act of 1978 ("CSRA" or "Act"), Pub.L. 95–454, 92 Stat. 1191, was enacted into law on October 13, 1978. Title VII of the CSRA is the Labor-Management Relations Chapter, 5 U.S.C. § 7101 *et seq.* (1982). The CSRA established the FLRA to administer Title VII and to provide "leadership in establishing policies and guidance relating to matters under this chapter." 5 U.S.C. § 7105(a)(1) (1982).

Under the CSRA, there exists a "mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a

good-faith effort to reach agreement with respect to the conditions of employment affecting such employees[.]" 5 U.S.C. § 7103(a)(12) (1982). The Act defines "conditions of employment" to include "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions[.]" 5 U.S.C. § 7103(a)(14) (1982). The CSRA excepts from this duty to bargain proposals which conflict with federal statutes, government-wide rules and regulations, agency regulations for which there is a compelling need, and certain enumerated "management rights." 5 U.S.C. §§ 7103(a)(14)(C), 7117(a)(1)–(2), 7106(a) (1982).

Under the CSRA, the FLRA is charged with the responsibility for carrying out the purposes of Title VII of the Act. 5 U.S.C. § 7105(a)(1) (1982). Specifically included within this responsibility is the mandate to resolve negotiability issues. 5 U.S.C. § 7105(a)(2)(E) (1982). Where, as here, a union submits a proposal to an agency for negotiations and the agency refuses to bargain, the union may file a negotiability appeal with the FLRA. 5 U.S.C. § 7117(c)(1) (1982).

National Federation of Federal Employees, Local 29 ("Union" or "Local 29") in its negotiations with the Department of the Army, U.S. Corps of Engineers, Kansas City District, Kansas City, Missouri ("Corps of Engineers" or "Agency"). App., No. 84–1578, at 1. Section 1 dealt with the selection process for reassignments, and stated:

When management (Employer) determines it is necessary to reassign employees due to a staffing imbalance, lack of work, shortage of funds, reorganization, or other reasons, the Employer will first ask for volunteers from among the qualified employees within that competitive area and level. If there are too many volunteers, the employees with the greatest retention standing will be given the reassignment. If there are too few or no volunteers, the employees with the least retention standing shall be given the reassignment.

Section 3 defined "competitive area" and "competitive level:"

Competitive Area: The geographic area that usually constitutes one area for employment purposes. It includes any population center (or two or more neighboring ones) and the surrounding localities in which people live and reasonably can be expected to travel back and forth daily in their usual employment.

Competitive Level: All positions within the activity in a competitive area which are sufficiently alike as far as qualification requirements/standards, duties, responsibilities, pay schedules, working conditions and conditions of employment.

This appeal deals with the proposal concerning competitive area only.[4]

In refusing to bargain concerning the definition of competitive area, the Corps of Engineers stated that the proposal was not within its duty to bargain because it would allow Local 29 to "bargain for the entire activity, including employees it does not represent." App., No. 84–1578, at 5. The FLRA found this proposal not within the Corps of Engineers' duty to bargain. The Authority held that the proposal would apply in RIF situations, *National Federation of Federal Employees, Local 29 and Department of the Army, U.S. Army Corps of Engineers, Kansas City District, Kansas City, Missouri ("Local 29")*, 16 FLRA 75, 77 (1984), and that the proposal would affect the working conditions of employees outside the bargaining unit. *Id.* at 78. The FLRA cited the *Local 32* case for the proposition that such a proposal is not within an agency's duty to bargain. *Local 29*, 16 FLRA at 78.

Having decided that the proposal would apply in RIF situations, the FLRA also held that the proposal would conflict with government-wide regulations, in violation of 5 U.S.C. § 7117(a)(1) (1982). *Local 29*, 16 FLRA at 78–79. According to the FLRA, Office of Personnel Management regulations, which require that each agency "establish competitive levels consisting of all positions in a competitive area ...," 5 C.F.R. § 351.403(a) (1983), require uniform treatment of all employees within a designated competitive area during a RIF. Building on the Union suggestion that the proposal would only apply to bargaining unit positions, the FLRA concluded that the proposal was not negotiable because it conflicted with the OPM requirement of uniform treatment of employees in a RIF. *Local 29*, 16 FLRA at 78–79.

## II. ANALYSIS

### A. *Standard for Review*

The Civil Service Reform Act ("Act" or "CSRA") provides that judicial review of FLRA decisions "shall be on the record in accordance with section 706 of this title." 5 U.S.C. § 7123(c) (1982). Section 706 of title five (a portion of the Administrative Procedure Act) requires this court to "hold unlawful and set aside agency action, find-

---

4. In its appeal to the FLRA, the Union withdrew its Section 3 proposal concerning the definition of competitive level. App., No. 84–1578, at 21. In its brief before this court, the Union with- drew its Section 1 proposal concerning reassignments. Br. for Petitioner, No. 84–1578, at 3 n. 1.

ings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (1982).

This standard requires that a court normally give "considerable deference" to the Authority's interpretation of its enabling legislation. *Bureau of Alcohol, Tobacco and Firearms v. FLRA ("BATF")*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). In the context of FLRA negotiability decisions, this court has held that the FLRA's construction of its statute will be upheld if it is "reasonably defensible." *Department of Defense v. FLRA*, 691 F.2d 553, 558–59 (D.C.Cir.1982).

▆▆▆ Despite this generally deferential standard, the Supreme Court has cautioned that "while reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act, they must not 'rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.'" *BATF*, 464 U.S. at 97, 104 S.Ct. at 444 (citations omitted). Most important for the decision in this case, where the Authority has issued an order which is apparently inconsistent with its prior orders, the more recent order may not stand unless the Authority demonstrates convincingly that the two orders are, in fact, harmonious. *Department of the Treasury v. FLRA*, 707 F.2d 574, 581 n. 24 (D.C.Cir.1983). While we acknowledge that an agency is free to alter its past rulings and practices even in an adjudicatory setting, it is equally settled that an agency must provide a reasoned explanation for any failure to adhere to its own precedents. *Airmark Corp. v. FAA*, 758 F.2d 685, 691–92 (D.C.Cir.1985); *Hatch v. FERC*, 654 F.2d 825, 834 (D.C.Cir.1981). In particular, we have cautioned that "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from tolerably terse to intolerably

mute." *Airmark Corp.*, 758 F.2d at 692 (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C.Cir.1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971)). It is to the problem of inconsistent rulings that we next turn.

## B. Inconsistent Rulings

In its *Local 32* opinion, the FLRA recognized that it previously had found that proposals seeking to define competitive areas were within the duty to bargain in two types of cases. *Local 32*, 14 FLRA 754, 755. The first type of case, exemplified by *National Treasury Employees Union and Department of Health and Human Services, Region IV*, 11 FLRA 254 (1983) (Union Proposal 1), involved a situation where the applicability of the proposal to non-bargaining unit employees was not asserted by the agency as a ground for precluding negotiation of the proposal. Thus, according to the *Local 32* opinion, this ground was not considered by the Authority in such a case. *See Local 32*, 14 FLRA at 755 (explaining circumstances of this type of case). We have no quarrel with the Authority's effort to distinguish this case.

▆▆▆ The *Local 32* opinion pointed to a second type of case where the Authority had held a proposed competitive area to be within an agency's duty to bargain, *Association of Civilian Technicians, Pennsylvania State Council and Pennsylvania Army and Air National Guard ("ACT")*, 14 FLRA 38 (1984). According to the *Local 32* opinion, in *ACT*, "the proposal effectively would have limited the competitive area to the bargaining unit and the Authority found that the agency had not asserted, nor was it otherwise apparent, that the proposal was inconsistent with laws or regulations applicable to National Guard Technicians." *Local 32*, 14 FLRA at 755. Although the *Local 29* opinion did not directly mention the *ACT* opinion, the Authority incorporated the reasons and cases cited in *Local 32*, thus reaffirming its previous conclusions about the meaning of the *ACT* opinion. *See Local 29*, 16 FLRA at 78. Thus, both the instant cases present the

question whether the Authority has treated like cases differently. Because we find that the Authority's decision in *ACT* is, on its face, inconsistent with the results obtained in the instant cases, and because the Authority's attempt to distinguish *ACT* is inadequate, we remand to the Authority.

To highlight the inconsistency between *ACT* and the instant cases requires that we first summarize in some detail the Authority's opinion in *ACT*. In *ACT*, Union Proposal 1 stated that "Non-bargaining unit technicians will not compete with bargaining unit technicians for bargaining unit positions." *ACT*, 14 FLRA at 38. The FLRA stated that the proposal would only apply in a RIF situation where bargaining unit positions were being eliminated. *Id.* "In other words," according to the FLRA, "Union Proposal 1 would define the competitive area, *i.e.*, the organizational boundaries within which employees who are affected by the RIF would compete for retention in the Agency, as being the bargaining unit." *Id.* In denying the negotiability of this proposal, the National Guard asserted that, by preventing non-bargaining unit technicians from competing in a RIF with bargaining unit technicians, the proposal would directly affect the working conditions of non-bargaining unit employees, and, thus, that the proposal was outside the Agency's duty to bargain. The FLRA rejected this argument, stating:

In this connection, the Authority has previously stated that a bargaining proposal which directly affects the conditions of employment of bargaining unit employees and is otherwise consistent with applicable laws and regulations is within the duty to bargain despite the fact that such proposal also would affect employees outside the bargaining unit.

*ACT*, 14 FLRA at 39.

On its face, this passage in the *ACT* opinion conflicts with the FLRA's declarations in *Local 32* and *Local 29* that a proposal which affects the conditions of employment of non-bargaining unit employees is outside the statutory duty to bargain. This apparent conflict is highlighted by four additional considerations. The first is that the principle that a proposal may be a mandatory subject for bargaining despite its effect on non-bargaining unit employees appears fairly well established in FLRA precedent.[5] A second consideration which further highlights the conflict is that the Authority's opinions in *Local 32* and *Local 29* appear to be at odds with a familiar principle of private labor law,[6] that a proposal concerning "terms and conditions of employment" is within the employer's duty to bargain, despite its potential effects on third parties. *See, e.g., Ford Motor Co. v. NLRB*, 441 U.S. 488, 502, 99 S.Ct. 1842, 1851, 60 L.Ed.2d 420 (1979) (holding that proposal concerning in-plant cafeteria prices was within duty to bargain despite fact that prices were set by third-party supplier rather than employer); *Allied Chemical & Alkali Workers v. Pitts-*

---

**5.** The *ACT* opinion, for example, cited *National Treasury Employees Union and Internal Revenue Service ("NTEU & IRS")*, 7 FLRA 275, 284 (1981) on the question whether a proposal could be a mandatory subject of bargaining despite its effect on non-bargaining unit employees. In *NTEU & IRS*, the Union proposed various procedures for filling vacancies in bargaining unit positions. The Union also proposed that these procedures would apply in filling a position by reassignment or transfer of a non-bargaining unit employee to a bargaining unit position. *Id.* at 278 (Proposal 2(A)(9)). Despite a challenge from the Agency, the FLRA held that these proposals would establish procedures for filling vacancies within the bargaining unit, which "clearly concern personnel policies, practices and matters affecting working conditions, *i.e.*, conditions of employment, of bargaining unit employees within the meaning of section 7103(a)(12) and (14)." *Id.* at 284. *See also American Federation of State, County & Municipal Employees, AFL–CIO, Local 2477, and Library of Congress, Washington, D.C.*, 7 FLRA 578 (1982) (holding that Union proposals concerning workplace conditions, *e.g.*, compliance with fire and safety codes, were within statutory duty to bargain), *enf'd, Library of Congress v. FLRA*, 699 F.2d 1280 (D.C.Cir.1983).

**6.** We acknowledge, of course, that the analogy between private sector and public sector case law is far from complete. *See Library of Congress v. FLRA*, 699 F.2d 1280, 1287 (D.C.Cir. 1983). A sharp departure from private sector principles in a public sector case must, however, give us pause.

504

*burgh Plate Glass Co.*, 404 U.S. 157, 179, 92 S.Ct. 383, 397, 30 L.Ed.2d 341 (1971) (indicating that "in each case the question is not whether the third-party concern is antagonistic to or compatible with the interests of bargaining-unit employees, but whether it vitally affects the 'terms and conditions' of their employment"); *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 210, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964) (holding that employer's failure to negotiate with the union concerning its decision to contract out maintenance work violated statutory duty to bargain with respect to terms and conditions of employment). A third fact which highlights the inconsistent treatment of this issue is that, in one of the instant cases, the Agency had, in the previous bargaining period, assumed that the definition of competitive area in a RIF was the proper subject for bargaining. *See* App., No. 84–1250, at 10 (noting that such a provision was agreed to in 1980 collective bargaining contract). No doubt there are other negotiating parties that are uncertain whether such proposals are or are not proper subjects for bargaining. *See* App., No. 84–1578, at 23 (Union indicates that "a good number of our negotiated agreements have these definitions included within them"). So long as the apparent inconsistency between *ACT* and *Local 32* remains, this uncertainty will continue.

The fourth, and most telling, consideration highlighting the conflict between the decisions in the instant cases and the decision in *ACT* appears in the Authority's incomplete attempt to distinguish *ACT*. To restate the FLRA explanation of *ACT*: "In that case, the proposal effectively would have limited the competitive area to the bargaining unit and the Authority found that the agency had not asserted, nor was it otherwise apparent, that the proposal was inconsistent with laws or regulations applicable to National Guard technicians." *Local 32*, 14 FLRA at 755. This explanation is incomplete because it does not state that the proposal would have had no effect on non-bargaining unit employees. Indeed, such a statement apparently could not be made. The FLRA stated that the objective of the proposal in *ACT* was to ensure that bargaining unit employees would compete only with each other for retention in bargaining unit positions. The proposal thus affected the terms and conditions of employment of the bargaining unit employees by determining who they would compete against for bargaining unit positions. Conversely, the proposal affected non-bargaining unit employees by excluding them from competition for bargaining unit positions. In addition, the FLRA's statement of the principle that a bargaining proposal which affects the terms and conditions of employment of bargaining unit employees is a mandatory subject for bargaining despite its effect on non-bargaining unit employees, *see ACT*, 14 FLRA at 39, assumes that there was an effect on non-bargaining unit employees in that case.

It appears that, since the *Local 32* decision, the FLRA has adhered to the view that proposals to define competitive areas in the RIF context are non-negotiable. *See, e.g., Department of Housing and Urban Development and American Federation of Government Employees, Local 476, AFL–CIO,* 18 FLRA 783, 785 n. 3 (1985); *National Federation of Federal Employees, Local 1705 and General Services Administration,* 17 FLRA 945, 946 (1985); *National Treasury Employees Union and Department of Health and Human Services, Region VII, Office of Human Development Services,* 17 FLRA 589, 590 (1985); *Department of Health and Human Services, Food and Drug Administration, Region II and American Federation of Government Employees, AFL–CIO, Council No. 242,* 17 FLRA 329, 330 (1985). Nevertheless, the inconsistency between the *ACT* and *Local 32* approaches remains. In the interest of facilitating judicial review of the FLRA's decision in this area, and in order to ensure that future negotiations are conducted within an atmosphere of certainty as to the applicable law, we must require the Authority to either explain its apparently inconsistent treat-

ment of the cases or explicitly adopt a new approach.

## C. Remaining Issues

In *Local 32*, the Union proposal was clearly intended to apply in a RIF situation. Thus, our discussion above fully outlines our treatment of the case.

 In *Local 29*, however, the Union raises additional issues concerning the scope of its proposal and other matters. The Union argues, first, that the FLRA failed to consider the negotiability of the proposal in a reassignment context. *See* Br. for Petitioner, No. 84–1578, at 10–11. The Union points to several indications that it intended, and the Corps of Engineers understood, that the proposal would apply both to RIFs and reassignments. *Id.* The Union thus concedes that the proposal would apply to RIFs, but insists that it could also apply to reassignments. The Union did not, however, explicitly request that the FLRA consider the proposal separately in each of its possible applications. The FLRA generally does not consider parts of a proposal separately, unless the parties specifically so request. *See, e.g., American Federation of Government Employees, Local 225, AFL–CIO and Department of the Army, U.S. Army Armament Research and Development Command, Dover, New Jersey,* 17 FLRA 417, 421–22 n. 9 (1985); *National Treasury Employees Union and Internal Revenue Service,* 14 FLRA 463 (1984); *National Treasury Employees Union and Internal Revenue Service, San Francisco, California,* 14 FLRA 65 (1984); *American Federation of Government Employees, Local 225 and U.S. Army Armament Research and Development Command, Dover, New Jersey,* 11 FLRA 630, 631 (1983); *National Federation of Federal Employees, Local 1497 and Headquarters, Lowry Technical Training Center (ATC), Lowry Air Force Base, Colorado,* 6 FLRA 9 (1981). Based on the record before the Authority, therefore, the FLRA correctly determined that the RIF and reassignment aspects of the proposal should be considered together. *See National Federation of Federal Employees, Local 1167 v. FLRA,* 681 F.2d 886, 892 & n. 10 (D.C.Cir.1982) (indicating that parties bear burden of establishing record before the Authority).

 The Union further contends that the OPM regulations concerning RIFs leave an agency with considerable discretion in defining competitive areas. Br. for Petitioner, No. 84–1578, at 12. Even assuming, however, that the Corps of Engineers could have defined the competitive area for RIFs to include bargaining unit employees only,[7] this conclusion would not necessarily mean that the proposal concerning the definition of competitive area was within the Agency's duty to bargain. Rather, this conclusion would only negate the FLRA's determination that the propos-

---

7. The OPM regulations provide that:

Each agency shall establish competitive levels consisting of all positions in a competitive area and in the same grade or occupational level which are sufficiently alike in qualification requirements, duties, responsibilities, pay schedules, and working conditions, so that an agency readily may assign the incumbent of any one position to any of the other positions without changing the terms of his appointment or unduly interrupting the work program.

5 C.F.R. § 351.403(a) (1983). The same regulations, however, appear to grant agencies some discretion in defining competitive areas. *See* 5 C.F.R. § 351.402(c) (1983) (agency may establish smaller competitive areas in exceptional circumstances, with approval of OPM); Federal Personnel Manual Ch. 351, subch. 2–3 (1981). Despite this apparent grant of discretion, the FLRA has consistently held that OPM regulations require uniform treatment of bargaining unit and non-bargaining unit employees in a RIF situation. *See National Federation of Federal Employees, Local 1705 and General Services Administration,* 17 FLRA 945, 946 (1985). We see nothing in the Union's contentions to deter us from upholding that consistent view. Nevertheless, the initial Union position was that its proposal was intended to apply only to bargaining unit positions. The Union appears to have contended that, as a factual matter, "[a]s there are no competitive levels now containing both bargaining and non-bargaining unit employees, there should be no impact on non-bargaining unit employees." App., No. 84–1578, at 23. Thus, we may assume that the Union intended its proposal to be construed as consistent with the OPM regulations.

**506**

al was non-negotiable because it conflicted with the OPM regulation. *See Local 29*, 16 FLRA at 78. The real issue in this case, whether the proposal improperly affects the terms and conditions of employment of non-bargaining unit employees, would remain. This same analysis would apply to the Union's contention that the OPM regulations requiring uniform treatment only operate after the agency has defined the competitive area.[8]

### III. CONCLUSION

In light of the apparent conflict between the FLRA's decision in these cases and its decision in *ACT*, we must set aside the Authority's orders as they relate to the proposals defining competitive area in each case. We remand the cases to the FLRA for consideration in light of the Authority's decision in *ACT*. On remand, we expect that the FLRA will address and resolve the conflict candidly and in a manner that persons affected by the Authority's decisions can comprehend.

*It is so ordered.*

---

**8.** The Union asserts, without citation to any authority, that the OPM regulation "does require equal treatment of all employees in a designated competitive area, but that is after the competitive area is defined." Reply Br., No. 84–1578, at 7. The Union, however, did not present this view to the FLRA in the first instance. Indeed, this argument first appears in the Union's Reply Brief. For this reason, we decline further consideration of this issue. *See* 5 U.S.C. § 7123(c) (1982) ("No objection that has not been urged before the Authority ... shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances.").