AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 2782, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 81–2386.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 28, 1982.

Decided March 18, 1983.

Phillip R. Kete * with whom Daniel Schember, Washington, D.C., on pleadings, for petitioner.

Janice M. Xaver, Washington, D.C., on brief, for petitioner.

Pamela P. Johnson and Elizabeth Medaglia, Federal Labor Relations Authority, Washington, D.C., on brief, for respondent.

Before MacKINNON, WALD and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

* Student counsel pursuant to this Court's Local Rule 20.

SCALIA, Circuit Judge:

This case raises the issue of a federal agency's duty to bargain under the Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–7135 (Supp. III 1979), concerning promotion rights of employees demoted through no fault of their own—for example, through necessary reductions in force (RIFs). Local 2782 of the American Federation of Government Employees, which represents employees in the Bureau of the Census, United States Department of Commerce, proposed the following arrangement:

> [A] repromotion eligible (i.e., an employee demoted through no fault of his or her own) will be selected for the first available vacancy for which he or she fully meets the qualification standards and which the agency determines to fill.

The agency refused to bargain over the proposal, on the ground that it was "inconsistent with [a] Federal law or [a] Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1). The union appealed this action to the Federal Labor Relations Authority under 5 U.S.C. § 7117(c)(1), which provides that "if an agency involved in collective bargaining with an exclusive representative alleges that the duty to bargain in good faith does not extend to any matter, the exclusive representative may appeal the allegation to the Authority . . . ." The Authority affirmed the agency, and the union now seeks our review under 5 U.S.C. § 7123.

The Federal Service Labor-Management Relations Act, enacted as Title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1191 (codified at 5 U.S.C. §§ 7101–7135 (Supp. III 1979)), was meant to implement the principle that "the right of Federal employees to organize, bargain collectively, and participate through labor organizations in decisions which affect them, with full regard for the public interest and the effective conduct of public business, should be specifically recognized in statute." Pub.L. No. 95–454, § 3(10), 92 Stat. 1113. It rests upon the proposition

that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). The Act contains a number of provisions designed to reconcile collective bargaining with the distinctive needs of government employment. Among these is the provision that the Authority relied upon in the present case, 5 U.S.C. § 7106, which reads as follows:

§ 7106. **Management rights**

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

(1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

(C) with respect to filling positions, to make selections for appointments from—

(i) among properly ranked and certified candidates for promotion; or

(ii) any other appropriate source; and

(D) to take whatever actions may be necessary to carry out the agency mission during emergencies.

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

(1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

The Authority held that "[t]he disputed proposal is inconsistent with section 7106(a)(2)(C) of the Statute and is, therefore, not within the duty to bargain." *AFGE v. Department of Commerce,* 7 FLRA No. 13 at 92 (1981). It would, the Authority said, "directly interfere with the exercise of management's rights under section 7106(a)(2)(C) to choose among candidates from appropriate sources in filling a vacancy and, consequently, cannot be deemed an 'appropriate arrangement for employees adversely affected' by management's exercise of its statutory rights, within the meaning of section 7106(b)(3) of the Statute." *Id.* at 93.[1] This reading of the statute cannot be sustained.

That an arrangement proposed under paragraph (b)(3) of § 7106 is not *ipso facto* invalidated by conflicting with paragraph (a)(2)(C) is evident from the prologue of subsection (b), which states that "[n]othing in this section shall preclude any agency and any labor organization from negotiating" over the specified items. The prologue of subsection (a) makes the same point, declaring that all the management prerogatives it contains (including those in paragraph (a)(2)(C)) are "[s]ubject to subsection (b) of this section." It is impossible to adopt the Authority's interpretation with-

---

1. We need not consider separately the contentions that the proposal is not negotiable because of that provision of § 7103(a)(14)(C) which excludes from the definition of "conditions of employment" "matters ... specifically provided for by Federal statute," and that provision in § 7117(a)(1) which imposes a duty to bargain only "to the extent not inconsistent with any federal law ...." If these provisions impose any obstacle in the present case, they do so only derivatively, through reference to the management rights requirement of § 7106(a).

out depriving these provisions of all meaning insofar as paragraph (b)(3) is concerned.

■ The Authority relies upon the "direct interference test," reflected in prior decisions of the Authority[2] and approved by this court in *Department of Defense v. FLRA,* 659 F.2d 1140, 1159 (D.C.Cir.1981), *cert. denied sub nom. AFGE v. FLRA,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Those decisions and that case, however, did not involve paragraph (b)(3), but rather paragraph (b)(2), which exempts from the management prerogative restriction "procedures which management officials of the agency will observe in exercising any authority under this section."[3] For purposes of determining what constitutes a "procedure" within the meaning of this provision, rather than an incursion upon management's substantive rights, it *is* pertinent to ask, as the "direct interference test" does, whether "implementation would 'directly interfere with the agency's basic right ... [reserved] under section 7106(a).'" *Department of Defense, supra,* 659 F.2d at 1159 (quoting the Authority's decision below in *AFGE v. Air Force Logistics Command,* 2 FLRA No. 77 at 613 (1980)). One or another variant of a test looking toward "direct effect on substantive rights" is a familiar means of separating "procedure" from "substance," whether in determining what rules to apply in diversity cases before federal courts, *see Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), discussed in *Department of Defense, supra,* 659 F.2d at 1151 n. 64, or in determining whether an agency rule is a "rule of agency ... procedure" under 5 U.S.C. § 553(b)(A) (1976), *see, e.g., Pickus v. United States Board of Parole,* 507 F.2d 1107, 1113 (D.C.Cir.1974), or for present purposes. Thus, in the context of paragraph (b)(2), the "direct interference test" does not drain the statute of all its meaning. As applied to paragraph (b)(3), it does. It is difficult to conceive of any "appropriate arrangements for employees adversely affected" which (1) would be invalid unless exempted from subsection (a); (2) do not directly affect management prerogatives; *and* (3) are not themselves procedures (so that paragraph (b)(3) would not entirely duplicate paragraph (b)(2)).[4]

The Authority has perhaps been misled by a confusing duplicity in subsection (b). Statutory or contractual provisions that begin "Nothing in this section shall preclude ..." serve two distinct purposes, which are often difficult to distinguish. Sometimes they are intended merely to *clarify* rather than *limit* the prior provisions. For example, a provision saying that "red is included" may be followed by a statement that "nothing in this section shall apply to dark pink." When this clarifying usage is employed, something which comes within the proviso cannot simultaneously come within the principal provision. The two categories

2. *See AFGE v. Air Force Logistics Command,* 2 FLRA No. 77 (1980), *aff'd sub nom. Dep't of Defense v. FLRA,* 659 F.2d 1140 (D.C.Cir.1981). That decision and the decision in the present case are to our knowledge the only Authority opinions explicitly using the "direct interference" formulation, although earlier decisions are consistent with that concept. *See, e.g., National Fed'n of Fed. Employees, Local 1451 v. Navy Exch., Naval Admin. Command,* 3 FLRA No. 60 (1980); *National Council of CSA Locals v. Community Serv. Admin.,* 3 FLRA No. 13 (1980).

3. One of the union proposals involved (and declared non-negotiable) in *Department of Defense, supra,* pertained to employees affected by reduction in force, and could conceivably have been upheld under exemption (b)(3). *See* Proposal XIII, discussed in 659 F.2d at 1163–64. The opinion contains no discussion of that exemption, however, but proceeds on the assumption that .the proposal involved "procedures," 659 F.2d at 1159, 1163, and that the union claimed negotiability only "[b]ecause its proposals are cast in procedural terms," 659 F.2d at 1151.

4. The one case cited by the Authority in its decision and on this appeal, as an example of an "appropriate arrangement" that would *not* run afoul of its "direct interference test," involved a union proposal which, as interpreted, required management "to *consider* but not necessarily to select the repromotion eligible employee." *American Fed'n of Gov't Employees, Local 2782 v. Department of Commerce,* 6 FLRA No. 56 at 319 (1981) (emphasis in original). This seems to us no more than a procedure that the agency must follow in filling the vacant position.

are mutually exclusive—the color is *either* red *or* dark pink. In other instances, however, the proviso is used genuinely to alter what precedes: "Nothing in this section shall apply to red tint No. 43." Under this usage, the excepted item is included *both* within the principal provision *and* (in order to except it) within the proviso—red tint No. 43 *is* red. In our view, paragraph (b)(2) —as permissibly interpreted by the Authority—is a proviso of the former sort; it requires a conventional dichotomy between substance (governed by subsection (a)) and procedure (governed by paragraph (b)(2)). Paragraph (b)(3), however, does not lend itself to such interpretation. There is no way to regard "appropriate arrangements for employees adversely affected" as a *clarification* of the scope of management prerogatives. "Appropriate arrangements" (unlike "procedures") is a meaningless clarification—and one that would not have to be limited to "employees adversely affected" as opposed to *all* employees. The conclusion is unavoidable that what was intended was an *exception* to the otherwise governing management prerogative requirements of subsection (a). This is in accord with standard labor-management provisions in the private sector, which curtail normal management hiring prerogatives with regard to employees who have been demoted, *see generally Promotion, Demotion & Transfers,* 2 Collective Bargaining: Negotiations and Contracts (BNA) No. 931, § 68 at 61–62 (Feb. 5, 1981), and D. Rothschild, L. Merrifield & H. Edwards, Collective Bargaining and Labor Arbitration 583–87 (2d ed. 1979).[5] It also explains the broad limiting word "appropriate," which (as we will discuss more specifically below) permits the Authority to place needful limitations upon the sweep of the exception. The Authority is incorrect, therefore, in its conclusion that proof of coverage by subsection (a) is automatically proof of nonexemption under subsection (b).

It would require legislative history of exceptional clarity to induce us to adopt an interpretation which, as described above, would deprive paragraph (b)(3) of virtually all effect. Here, most of the legislative history consists of the usual conflicting generalities, providing assurance, if they are all to be taken at face value, that the proposed bill offers the best of both worlds, fully preserving the prerogatives of federal managers (statements upon which the Authority justly relies) while yet fully promoting collective bargaining on all significant issues (statements which the Authority understandably tends to ignore). The portions of legislative history most precisely directed to the point at issue here support the interpretation we have adopted. Congressman Ford, a member of the House conference committee on the bill, described in the House debate as having "played a key, critical role" in the formation of the compromise that became Title VII and as having "made it possible," 124 Cong.Rec. 29,197 (1978) (Statement of Rep. Udall), said the following in the House floor debate:

> [W]e expressly provide in the language of title VII itself that negotiations may occur over the adverse impact caused by the exercise of any of the management rights in title VII and that procedures may be negotiated for the exercise of those rights. . . .
>
> . . . .
>
> . . . [A]lthough management has the right to direct the work force, proposals aimed at lessening the adverse impact on employees of an exercise, perhaps arbitrary, of that right are fully negotiable. Moreover, agency administrators are fully authorized to negotiate procedures for adequate supervision without avoiding the act.

124 Cong.Rec. 29,198–99 (1978). These statements suggest that the provision concerning employees adversely affected *can* limit the exercise of management rights;

---

**5.** *See also* 5 C.F.R. Pt. 351 (1982), which applies to all employees demoted for economic reasons and requires each agency to classify such persons on a retention register (Subpart D), pursuant to the guidelines set forth in Sub-

part E, and to establish a "reemployment priority list" (Subpart J); and 5 C.F.R. § 330.201 (1982), which gives persons on such list priority in the filling of vacancies.

and clearly indicate that the provision is meant to accomplish something *in addition to* the provision that enables bargaining over mere procedures. The following statement by Representative Ford is even more illuminating:

> By the clear language of the bill itself, any exercise of the enumerated management rights is conditioned upon the full negotiation of arrangements regarding adverse effects and procedures. As is made clear by the absence of the phrase "at the election of the agency," [which appears in paragraph (b)(1) but not in (b)(2) or (3)] procedures and arrangements are mandatory subjects of collective bargaining. Only after this obligation has been completely fulfilled is an agency allowed to assert that a retained management right bars negotiations over a particular proposal....
>
> In negotiating appropriate arrangements for employees adversely affected by exercise of a management right, it may obviously be necessary to address the substance of the exercise itself. If, for example, an agency initially contemplates transferring 10 employees into quarters suitable for only half that number, an "appropriate arrangement" cannot be negotiated without changing (at least somewhat) the number of employees to be relocated. Thus, the need for giving first priority to negotiating the arrangements for the adversely affected employees even if these negotiations impinge on the management right to transfer.

124 CONG.REC. 38,715 (1978). Without endorsing the accuracy of the precise example given, we think this demonstrates a clear understanding that negotiable provisions for employees adversely affected can contravene what would in other circumstances be management prerogatives.

The text and legislative history of the Act are sufficiently clear to overcome the deference we would normally accord an agency's interpretation of its organic statute, *see Process Gas Consumers Group v. United States Department of Agriculture,* 694 F.2d 778, 791–92 (D.C.Cir.1982) (en banc).

We hold, therefore, that the Authority cannot find a union proposal regarding adversely affected employees to be nonnegotiable simply because the proposal envisions some constraints upon rights generally reserved (in other contexts) to management. To say that the word "appropriate" (in the phrase "appropriate arrangements" of paragraph (b)(3)) cannot bear this much weight is not to say that it can bear no weight at all. Undoubtedly, some arrangements may be inappropriate because they impinge upon management prerogatives *to an excessive degree.* A provision, for example, that would require a demoted employee simply to be repromoted to his or her former job would be inappropriate (to the point of absurdity) for that reason. Beyond that, we decline to speculate as to what the word "appropriate" may lawfully be interpreted to exclude. Its precise content is for the Authority to determine in the first instance, based on its knowledgeable estimation of the competing practical needs of federal managers and union representatives.

Finding that the basis for the Authority's decision—the supposed nonnegotiability of any arrangement for adversely affected employees that contravenes subsection 7106(a) management rights—was contrary to law, we set the decision aside. *See* 5 U.S.C. § 706(2)(A) (1976). On remand, the Authority is free to determine whether the union's proposal, albeit not invalid simply because it contravenes subsection 7106(a) management rights, is nonetheless inappropriate. It is also free to consider the agency's other claim, which neither it nor we have addressed, that the proposal is nonnegotiable because it covers matters "which are the subject of ... a Government-wide rule or regulation," 5 U.S.C. § 7117(a)(1).

*Petition granted.*