868 F.2d 458
 276 U.S.App.D.C. 129
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PATENT OFFICE PROFESSIONAL ASSOCIATION, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
 No. 87-1135.
 United States Court of Appeals, District of Columbia Circuit.
 March 30, 1988.
 
 Before MIKVA and BUCKLEY, Circuit Judges, and LOUIS F. OBERDORFER* U.S. District Judge for the District of Columbia.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This petition was considered on the record made before the Federal Labor Relations Authority and was briefed and argued by counsel. Though the issues presented occasion no need for a published opinion, we have accorded them full consideration. See D.C.Cir.R. 14(c). On consideration of the foregoing and for the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the court that the petition for review be denied. It is
 
 
 3
 FURTHER ORDERED by the court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 This case concerns the negotiability of nineteen proposals presented by the Patent Office Professional Association to the Patent and Trademark Office of the Department of Commerce. Each proposal involves the development or application of performance standards under the agency's employee appraisal system. The Federal Labor Relations Authority held that the agency need not bargain over them because they impinge upon the agency's authority to assign work, and because they cannot be characterized as "procedures" by which work is assigned, or as "appropriate arrangements" for adversely affected employees. We affirm.
 
 I. Background
 
 5
 The Civil Service Reform Act of 1978, Pub.L. No. 95-454, 92 Stat. 1111 (1978) ("CSRA"), requires federal agencies to develop performance appraisal systems for their employees. 5 U.S.C. Sec. 4302(a) (1982). In 1981, the Patent Office Professional Association ("POPA" or "union") sought to negotiate with the Patent and Trademark Office ("agency") over a series of complex proposals concerning the development and application of performance standards. When the agency declined to negotiate thirty-six of them, POPA filed a negotiability appeal with the FLRA, arguing that the agency has a duty to bargain under the Federal Service Labor-Management Relations Act, 5 U.S.C. Secs. 7101-7135 (1982 & Supp. II 1984) ("FSLRA").
 
 
 6
 The FSLRA establishes the broad duty of federal employers to negotiate with their employees over "conditions of employment." 5 U.S.C. Sec. 7102 (1982). Under section 7106(a)(2)(B), this general duty to bargain does not apply where a proposal would affect management's authority "to assign work." Employers must nevertheless bargain over "procedures" by which work is assigned, id. at Sec. 7106(b)(2), and "appropriate arrangements" for adversely affected employees. Id. at Sec. 7106(b)(3).
 
 
 7
 The FLRA applied these provisions to hold that twenty-eight of the union's proposals are nonnegotiable. Patent Office Professional Association and Patent Trademark Office, Department of Commerce, 25 F.L.R.A. 384 (1987) ("POPA "). POPA petitioned this court to review the negotiability of nineteen of them. The union does not dispute the FLRA's threshold finding that the proposals implicate management's right to assign work. Rather, the union argues that the proposals are nevertheless negotiable as procedures or appropriate arrangements under sections 7106(b)(2) and (3).
 
 II. Analysis
 A. The Standard of Review
 
 8
 Review of an FLRA order shall be conducted in accordance with section 706 of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) (1976). 5 U.S.C. Sec. 7123 (1982). Section 706 provides that a reviewing court may set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
 
 
 9
 In applying this standard to the current case, we give considerable deference to the FLRA's interpretation of its enabling legislation. Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97 (1983). As we noted in National Treasury Employees Union v. FLRA, 691 F.2d 553, 561 (D.C.Cir.1982) ("NTEU I "), "Congress ... intended that the judgment and balance essential to determinations on the bargainable nature of issues arising under the Act would be exercised, not by courts, but instead by the Authority."
 
 B. Negotiability Under Section 7106(b)(2)
 
 10
 However phrased, a proposal is not a negotiable procedure under section 7106(b)(2) if "implementation would ... interfere directly with managerial prerogatives." AFGE, Local 1923 v. FLRA, 819 F.2d 305, 308 (D.C.Cir.1987). An agency's statutory right to assign work includes the right to determine the content of performance standards. NTEU I, 691 F.2d at 563 (upholding "Authority's determination that prescription of performance standards and identification of critical job elements are confined exclusively to management"); AFGE, Local 3748 v. FLRA, 797 F.2d 612 (8th Cir.1986). Consequently, our first task is to determine whether each of POPA's nineteen proposals directly affects management's discretion to establish the content of such standards.
 
 
 11
 A proposal may directly interfere with the development of performance standards in any of several ways. In NTEU I, we held that management was not required to negotiate over a proposal that set specific performance levels for accounts maintenance clerks. 691 F.2d at 561-65. But a proposal need not present particularized standards to limit management discretion impermissibly. In Department of Defense v. FLRA, 659 F.2d 1140, 1152 (D.C.Cir.1981), cert. denied, 455 U.S. 945 (1982), we wrote that a proposal may also "impinge on substantive management decisions by specifying the criteria pursuant to which the decisions are to be made." See also National Treasury Employees Union v. FLRA, 767 F.2d 1315, 1317 (9th Cir.1985) ("NTEU II "). Similarly, proposals establishing broad reasonableness standards may limit management discretion by inviting arbitral review to determine whether such standards are met. AFGE, Local 3748, 797 F.2d at 616. The basic flaw common to all the proposals now before us is that they focus on the content of the performance standards rather than on their application. Thus they intrude on management's exclusive right to determine the substance of performance standards.
 
 
 12
 The union disagrees, citing Patent Office Professional Association and U.S. Patent Office, 3 F.L.R.C. 636 (1975) ("POPA I "), and AFGE, Local 32 and OPM, 3 F.L.R.A. 784 (1980), as examples of cases where proposals outlining broad requirements of fairness and reasonableness were held to be negotiable. POPA I was decided by the Federal Labor Relations Commission under Executive Order 11491; as we have held previously, the FLRA is not bound by the decisions of its predecessor. Department of Defense v. FLRA, 659 F.2d 1140, 1162-63 (D.C.Cir.1981).
 
 
 13
 In AFGE Local 32, the FLRA merely held that management must negotiate over proposals establishing requirements "by which the application of critical elements and performance standards established by management may subsequently be evaluated in a grievance by an employee." 3 F.L.R.A. at 792. The case has been interpreted to mean only that management must negotiate about the application of performance standards in a grievance proceeding; it does not mean that management must negotiate over proposals providing that the content of performance standards must be fair or reasonable. See NTEU II, 767 F.2d at 1317; AFGE, Local 32 and OPM, 16 F.L.R.A. 948, 951 (1984).
 
 
 14
 We are also unpersuaded by POPA's argument that 5 U.S.C. Sec. 4302(a)(2) (1982) mandates negotiation over the content of performance standards. The section provides that agencies shall "encourage employee participation in establishing performance standards." We do not read this statutory exhortation to mandate collective bargaining over such standards. See AFGE Local 3748, 797 F.2d at 617 ("the section allows employees to contribute ideas that management may accept or reject"). Section 4302 does not dilute the rights reserved to management in section 7106.
 
 
 15
 Applying these lessons to the nineteen proposals at issue in the current case, we conclude that all of them interfere in one way or another with management's right to develop performance standards. A number of them attempt to impose criteria that would invite an arbitrator to make determinations that are statutorily reserved to the agency. It is irrelevant that some of the union's proposals may be eminently reasonable: "to specify any criteria, however reasonable, is to invade the management's exclusive statutory preserve." NTEU II, 767 F.2d at 1317. Accordingly, we are not persuaded that the FLRA's decision under section 7106(b)(2) is arbitrary, capricious, an abuse of discretion, or contrary to law.
 
 C. Negotiability Under Section 7106(b)(3)
 
 16
 POPA argues in the alternative that even if the proposals are not procedural, certain of them are nevertheless negotiable as "appropriate arrangements" for adversely affected employees under section 7106(b)(3). The FLRA ruled that because the proposals concern the content of performance standards rather than their impact on employees, there is no basis on which to hold that the proposals are "arrangements." POPA, 25 F.L.R.A. at 396.
 
 
 17
 This court first explained the distinction between negotiable procedures and arrangements in AFGE, Local 2782 v. FLRA, 702 F.2d 1183 (D.C.Cir.1983). We noted that section 7106(b)(3) "is meant to accomplish something in addition to the provision that enables bargaining over mere procedures." Id. at 1188 (emphasis original). While a particular proposal may not qualify as a negotiable procedure because it directly interferes with management's exercise of a substantive right, that same proposal may be a negotiable arrangement so long as it does not "impinge upon management prerogatives to an excessive degree." Id. (emphasis original).
 
 
 18
 The FLRA did not reach that question. Rather, it asserted that POPA's proposals are not "arrangements" within the meaning of section 7106(b)(3). According to the Authority, the establishment of a performance standard does not by itself have an adverse effect on employees for which a union may propose appropriate arrangements that an employer is required to negotiate. Because the proposals are addressed to the content of the agency's performance standards and not their implementation, they do not constitute arrangements to buffer the possible adverse impact of the standards on employees. Therefore, the FLRA concluded, the proposals are "outside the agency's duty to bargain." Id.
 
 
 19
 The FLRA's reasoning is sound as far as it goes, and it need go no further in order to support its conclusion that POPA had failed to proffer negotiable arrangements. The Authority muddies the water, however, when it adds the gratuitous statement that "[a]ny adverse effect will come when an action is taken against an employee based upon the application of those job requirements to that employee." Id. If the Authority means by this that arrangements may never be negotiated until after a performance standard has actually had an adverse impact on an employee, it is wrong. In AFGE, Local 2782, 702 F.2d 1183, for example, we affirmed the negotiability of arrangements dealing with the "repromotion" of employees demoted through no fault of their own provided the arrangements were found to be "appropriate." It was not suggested that a blameless employee would first have to be demoted before negotiable arrangements for so foreseeable a contingency could be proposed.
 
 
 20
 In the case before us, the challenged proposals fail to specify the nature of either the potential adverse impact on employees or of the arrangements that are allegedly proposed. Therefore, we find no basis for rejecting the FLRA's conclusion that the proposals fail to meet the threshold requirements for consideration under section 7106(b)(3).
 
 III. Conclusion
 
 21
 The union's proposals are not negotiable procedures because, if implemented, they would directly interfere with management's right to assign work. The proposals are not negotiable as appropriate arrangements because they are not directed to adverse effects on employees that might reasonably result from the application of performance standards.
 
 
 22
 For the foregoing reasons, we deny the union's petition for review.
 
 
 23
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 292(a)