UNITED STATES DEPARTMENT OF the INTERIOR MINERALS MANAGEMENT SERVICE, NEW ORLEANS, LOUISIANA, Petitioner,

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

American Federation of Government Employees, AFL–CIO, Local 3457, Intervenor.

Nos. 91–1218, 91–1219 and 91–1510.

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1992.

Decided July 17, 1992.

Robert V. Zener, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., was on the brief, for petitioner.

Frederick M. Herrera, Atty., Federal Labor Relations Authority, with whom William E. Persina, Sol., and William R. Tobey, Deputy Sol., Washington, D.C., were on the brief, for respondent. Jill A. Griffin, Atty., Federal Labor Relations Authority, Washington, D.C., also entered an appearance for respondent.

Joe Goldberg, Charles A. Hobbie, Washington, D.C., and Mark D. Roth, Chicago, Ill., entered appearances for intervenor.

Before WALD, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In this consolidated proceeding, the Departments of Interior and Education petition for review of determinations by the Federal Labor Relations Authority ("FLRA" or "Authority") that certain union proposals addressing drug testing programs and agency personnel actions are negotiable as "appropriate arrangements for employees adversely affected by the exercise" of management rights. 5 U.S.C. § 7106(b)(3). Because we conclude that the Authority erred in its application of § 7106(b)(3), we allow the petitions for review and deny the Authority's cross-petitions for enforcement.

## BACKGROUND

Under 5 U.S.C. § 7106(a) of the Federal Service Labor–Management Relations Statute ("FSLMRS"), agencies have no duty to bargain over "management rights," including the agency's budget, mission, work assignments, and internal security practices. Labor organizations may, however, negotiate

procedures which management officials of the agency will observe in exercising any authority under [§ 7106(a)], ... [and] appropriate arrangements for em-

ployees adversely affected by the exercise of any authority under [§ 7106(a)] by such management officials.

5 U.S.C. § 7106(b)(2)–(3). In each of the three consolidated decisions before us, a labor union submitted proposals for negotiation; a government agency (in two instances the Department of Education, in one the Department of the Interior) asserted that the proposal was protected from negotiability by the management rights doctrine. The union asserted a § 7106(b) exception. The Authority held each proposal negotiable.

In *American Federation of Government Employees, Dep't of Education Council of AFGE Locals and U.S. Dep't of Education*, 38 F.L.R.A. 1068 (1990) (*"Education I"*), the labor union submitted a proposal regarding Education's drug testing program, asking Education to "agree[ ] that the establishment and administration of its drug abuse testing program will be done in strict compliance with the U.S. Constitution and all applicable laws, rules and regulations and this [collective bargaining] agreement." *Id.* at 1074. Education asserted that this provision directly interfered with the management right to determine "internal security practices" under § 7106(a)(1). The Authority agreed but ruled the proposal negotiable under § 7106(b)(3) as an "appropriate arrangement for employees adversely affected by the exercise of a management right." *Id.* at 1077 (citing *Kansas Army National Guard*, 21 F.L.R.A. 24 (1986)).

The Authority opined that the implementation of a drug testing program "could adversely affect employees" through disciplinary actions and harm to reputation that would befall an employee testing positive for drugs. *Education I*, 38 F.L.R.A. at 1077. Reasoning that the "proposal attempts to mitigate the adverse consequences of the Agency's establishment of its drug testing program by requiring the Agency to adhere to the limits established in the United States Constitution, applicable laws, rules and regulations," *id.*, the Authority held the drug testing proposal to be a mandatory subject of bargaining. *Id.* at 1077–78.

At the reconsideration hearing, Education asserted that the proposal was "designed not to deal with the aftermath of the exercise of the management right, but to *prevent* adverse impact from occurring at all." *Department of Education Decision on Reconsideration*, 39 F.L.R.A. No. 107, at 4 (March 15, 1991) (*"Education I Reconsideration"*). According to Education, the only employees who could claim to be adversely affected by the drug testing program were those who tested positive; yet, the union proposal extended preventative protection to all employees, including those never subjected to the test and those who tested negative. *Id.* The Authority, repeating its finding that there were "reasonably foreseeable adverse effects on employees" caused by the implementation of the drug testing program, found no merit in the agency's plea that arrangements could be imposed only to ameliorate the effects on those employees testing positive, and reaffirmed its findings. *Id.* at 5.

The second consolidated decision, *Department of Interior Mineral Management Service*, 39 F.L.R.A. No. 111 (March 18, 1991) (*"Interior"*), involved a union proposal identical to that in *Education I*. Interior contended that the union had not detailed how the proposal constituted an "appropriate arrangement" under § 7106(b)(3). *Id.* at 2. Conceding that the union had not "specifically raised an argument in this case that the proposal" falls within § 7106(b)(3), the Authority nevertheless applied its ruling in *Education I* and held for the union. *Id.* at 3.

In the final decision, *Department of Education II*, 42 F.L.R.A. No. 34 (Sept. 27, 1991), Education refused to bargain over a proposal requiring it to "comply with its own regulations governing personnel policies and practices, and general conditions of employment whether such regulations are discretionary or mandatory and whether or not such regulations involve an exercise of a management right." *Id.* at 2. Education's arguments included an assertion that the "proposal does not constitute an appropriate arrangement under

§ 7106(b)(3) ... because it is not responsive to any identified adverse impact." *Id.* at 3 (internal quotations omitted).

Following the same approach as in *Education I*, the Authority found that the proposal interfered with § 7106(a) management rights, *id.* at 11, but was an appropriate arrangement under § 7106(b)(3). *Id.* at 14. It maintained that employees "may be 'adversely affected,'" by management actions in contravention of "existing regulatory requirements," and that the proposal was not excessive because it provided employees with "clear assurance" that management would comply with its regulatory requirements. *Id.* The proposal would also "enable employees to challenge alleged noncompliance through the negotiated grievance and arbitration procedure." *Id.*

From this decision, as well as *Education I* and *Interior*, the Departments of Education and Interior seek relief under the judicial review provision of the FSLMRS, 5 U.S.C. § 7123.

## ANALYSIS

Before reaching the merits, we must address the FLRA's contention that Interior and Education failed to raise some of their arguments regarding the interpretation of § 7106(b)(3) in the proceedings below, and did not seek reconsideration in *Interior* and *Education II*. Asserting that no extraordinary circumstances exist to excuse this oversight, the FLRA argues that we have no jurisdiction to entertain arguments now raised for the first time on appeal.

■ Of course, the judicial review provision of the FSLMRS prohibits appellate courts from hearing objections that were not urged before the Authority, unless the failure to raise the objections is "excused because of extraordinary circumstances." 5 U.S.C. § 7123(c), *applied in Department of Treasury v. FLRA*, 707 F.2d 574, 579–80 (D.C.Cir.1983). The "plain language [of § 7123(c)] evinces an intent that the FLRA shall pass upon issues arising under the Act, thereby bringing its expertise to bear on the resolution of those issues." *EEOC v. FLRA*, 476 U.S. 19, 23, 106 S.Ct. 1678, 1681, 90 L.Ed.2d 19 (1986).

■ Our review of the record convinces us that the requirements of § 7123(c) have been satisfied. As set forth above, Education raised extensive objections regarding the Authority's interpretation of § 7106(b)(3) in *Education I Rehearing*, objections which the Authority then passed upon fully, bringing its expertise to bear on the resolution of those issues. 39 F.L.R.A. No. 107, at 4–6. The agency repeated those objections in *Education II*. 42 F.L.R.A. No. 34, at 3 ("The Agency claims that the [union] proposal does not constitute an appropriate arrangement under section 7106(b)(3) of the Statute because it 'is not responsive to any identified adverse impact.'"). Finally, though Interior did not raise specific objections about whether the contested proposal fit within § 7106(b)(3), neither did the union attempt to show that its proposal was an "appropriate arrangement." 39 F.L.R.A. No. 111, at 3 ("We recognize that the Union has not specifically raised an argument in this case that the proposal is intended as an appropriate arrangement."). Since the Authority itself advanced the § 7106(b)(3) justification for the proposal, and a rehearing petition would have been futile given that the Authority had just found an identical proposal negotiable under § 7106(b)(3) in *Education I Rehearing*, we find that extraordinary circumstances allow us to hear Interior's arguments, which simply track the objections considered by the Authority in *Education I Rehearing*. *See Department of Agriculture, Food & Nutrition Service v. FLRA*, 879 F.2d 655, 659 (9th Cir.1989) (observing that "extraordinary circumstances" exist when the Authority itself raises an issue at the time of its Order).

■ As to the merits, Education and Interior first argue that § 7106(b)(3) cannot encompass proposals such as the ones at issue here, because these proposals benefit employees before they are "adversely affected" by a management action. According to the agencies, § 7106(b)(3) mandates bargaining only over proposals that provide some ameliorative arrangement for an employee who has suffered some adverse effect, such as the consequences that may result from either a positive drug test or

the inconsistent application of a personnel regulation. The agencies draw support for their argument from Congress's use of the past tense in the phrase "adversely affected," arguing this shows Congress intended that "employees must be adversely affected *before* the 'arrangement' is operative." Reply Brief for Petitioners at 8 (emphasis added). In effect, the agencies argue, the FLRA's interpretation of "adversely affected" "edit[s] the past tense out [of] the statute. altogether." *Id.*

We agree with the agencies that the plain language of § 7106(b)(3) demands that the FLRA assure that arrangements are tailored to redress only those employees adversely affected by a management action. *See American Federation of Government Employees, Local 2782 v. FLRA,* 702 F.2d 1183, 1187 (D.C.Cir.1983) (*"Local 2782"*) (Scalia, J.) (suggesting that because § 7106(b)(3) is an exception allowing employees to negotiate over substantive management rights, it must be "limited to 'employees adversely affected' as opposed to *all* employees"). Congress provided that unions could negotiate over "appropriate arrangements *for employees adversely affected* by the exercise" of a management prerogative. 5 U.S.C. § 7106(b)(3) (emphasis added). By this, Congress necessarily excluded arrangements not tailored to benefit the adversely affected. *See Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

In earlier decisions of this Court involving § 7106(b)(3), we have reviewed union proposals tailored to assist employees harmed by some management action. For example, in *Overseas Educ. Ass'n, Inc. v. FLRA,* 876 F.2d 960 (D.C.Cir.1989), a teachers' union advanced several proposals designed to alleviate the loss of planning and free time that full-time teachers would experience due to additional work responsibilities ordered by management. *Id.* at 962–63 & n. 14. Importantly, these arrangements provided compensatory free periods for only those teachers encumbered by ad-

ditional duties as a result of the management action, not for every teacher employed in the DoD school system. In a similar manner, the union proposal at issue in *Local 2782* sought to provide enhanced repromotion rights only for employees demoted because of a reduction in force. 702 F.2d at 1184, 1188.

█ As written, the proposals before us would apparently allow employee challenges to any action stemming from implementation of an agency drug program, or any agency personnel action regardless of whether any challenging employee was adversely affected by such action. More importantly, the Authority did not assess whether the rights conferred by the proposals, if adopted, would be limited to employees who suffered adverse effects as foreseen by the Authority. In *Education I* and *Education I Rehearing,* the Authority halted its analysis once it found that the drug testing proposal might succor employees who suffered the adverse effects flowing from a positive drug test. The Authority did not go on to consider whether the balm provided by the proposal would be administered only to hurts arising from the program, and to employees suffering such harm. Likewise, the Authority in *Education II* ceased its analysis once it found that the proposal could benefit employees harmed by an agency action in contravention of an agency personnel policy, neglecting to appraise whether the proposal could be used to allow a plethora of challenges to agency personnel actions focusing on far more than adverse effects suffered by employees from those actions.

Unlike the Authority, we read § 7106(b)(3) as unambiguously applying only where the FLRA has identified the reasonably foreseeable adverse effects that will flow from some management action; and only when the proposed arrangement is tailored to benefit or compensate those employees suffering those adverse effects. As the Authority did not fulfill the second part of this requirement in these challenged orders, it acted contrary to law. We therefore set aside these challenged orders. 5 U.S.C. § 706(2)(A).

We pause to note what we are not doing in this case. We are not holding that the

use of the past tense in the phrase "adversely affected" creates a temporal wall forbidding any negotiability except as to harm that has already occurred. We recently considered and rejected this interpretation in *Department of Treasury, Office of Chief Counsel, Internal Revenue Service v. FLRA*, 960 F.2d 1068 (D.C.Cir.1992) ("*Department of Treasury*"). There we held that the statute was ambiguous as to whether such temporal import was intended in the phrase or whether it was an adjectival formulation not carrying temporal import. As we found § 7106(b)(3) ambiguous, we deferred to the administrative agency's interpretation. *Id.* at 1072 (citing *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82). As we found FLRA's adjectival interpretation reasonable, we affirmed the Authority's decision mandating the agency to negotiate over a union proposal that management furnish "evaluative recordation" to employees before using it in personnel decisions.

Neither do we hold that "appropriate arrangements" target in advance the specific individual employees who will be adversely affected. As we held in *Department of Treasury*, "nothing in the language of paragraph (b)(3) ... requires union proposals to target in advance the very individual employees who will be adversely affected. We think it sufficient that the Authority reasonably concluded that evaluations will surely have adverse effects on some employees." *Id.* at 1071.

Nothing we say here is in conflict with either holding in *Department of Treasury*. The Authority has already ruled in these consolidated cases that the subject matter of each proposal is within the management rights doctrine. *Education I*, 38 F.L.R.A. at 1077; *Interior*, 39 F.L.R.A. No. 111, at 3 (incorporating *Education I*); *Education II*, 42 F.L.R.A. No. 34, at 13. As the proposals are not within the exception to that doctrine created by § 7106(b)(3), we conclude that the petition for review is well taken and that the proposals are not negotiable.

## CONCLUSION

For the reasons set forth above, we allow the three consolidated petitions for review.

Consistent therewith, we deny the Authority's cross-petitions for enforcement of the same orders.