United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 8, 1998 Decided November 13, 1998 

 No. 97-7229

 Metropolitan Washington Airports Authority 

 Professional Firefighters Local 3217, 

 International Association of Firefighters, 

 AFL-CIO-CLC, 

 Appellant

 v.

 Metropolitan Washington Airports Authority, 

 Appellee

 Appeal from the United States District 

 Court for the District of Columbia 

 (97cv00930)

---------

 Anton G. Hajjar argued the cause for appellant. With him 
on the briefs was Ruth E. Peters.

 Peter W. Tredick argued the cause for appellee. With him 
on the brief were Emily M. Yinger and N. Thomas Connally.

 Before: Silberman, Henderson, and Randolph, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Silberman.

 Separate concurring opinion filed by Circuit Judge 
Henderson.

 Silberman, Circuit Judge: The Metropolitan Washington 
Airports Authority Professional Firefighters Association, Lo-
cal 3217 appeals from a district court order dismissing the 
union's claim that the Authority's refusal to bargain over the 
installation of video surveillance breached the lease under 
which the airports are governed. Because the district court 
lacked jurisdiction to adjudicate the unfair labor practice 
claim, we affirm the dismissal.

 I.

 The Metropolitan Washington Airports Act of 1986 (codi-
fied as amended at 49 U.S.C.A. ss 49101-49112 (West Supp. 
1998)) authorizes the Secretary of Transportation to transfer 
responsibility for the operation of the Reagan National and 
Dulles airports from the Federal Aviation Administration to 
the Metropolitan Washington Airports Authority, a regional 
entity created for that purpose by the Virginia General 
Assembly and the District of Columbia City Council. The 
transfer of control, which took effect in 1987, was achieved by 
means of a 50-year lease between the Secretary of Transpor-
tation as lessor and the Authority as lessee. Jurisdiction is 
conferred on the district courts of the United States to 
compel the Authority to comply with the terms of this lease. 
49 U.S.C.A. s 49104(c).

 The Act obligates the Authority to "continue all collective 
bargaining rights enjoyed by employees [of the Airports] 
before June 7, 1987 [the date the lease took effect]." Id. at 
s 49104(a)(6)(D). Accordingly, in the lease, the Authority 
promised to "adopt and maintain an employment code" to 
assure that those collective bargaining rights would continue 
to be protected. Lease of the Metropolitan Airports Be-
tween the United States of America and the Metropolitan 

Washington Airports Authority, Art. 14.B. Using the regula-
tory powers conferred upon it jointly by the legislative au-
thority of Virginia and the District of Columbia, the Authori-
ty, after notice and comment, adopted a Labor Code. The 
Code, which was subsequently ratified by the Virginia legisla-
ture, provides that allegations of unfair labor practices "shall 
be submitted" to an Unfair Labor Practices Panel, whose 
"power in this regard shall be exclusive," and that the find-
ings of the Panel "shall be conclusive and binding" unless a 
petition for relief is timely filed with the appropriate Virginia 
Circuit Court. The Code also gives the Virginia courts 
jurisdiction to hear a complaining party's petition for enforce-
ment of the Panel's decision.

 After the Reagan National Airport fire station suffered 
recurring incidents of theft and damage to Authority property 
and equipment, the Authority's Police Department placed a 
video surveillance camera in the equipment bay of the fire 
station as part of its investigation of the incidents. Shortly 
after the installation several firefighters discovered the hid-
den camera, and the union filed an unfair labor practice 
charge alleging that the Authority had violated ss 2.12(1)(a) 
and (e) of the Code (containing standard language requiring 
bargaining in good faith) by installing and using the video 
camera without first bargaining with the union over the 
implementation of the video surveillance. The union did not 
claim that the Authority's decision to conduct covert surveil-
lance violated the Code, but, relying on our decision in 
American Federation of Government Employees v. FLRA, 
702 F.2d 1183, 1188 (D.C. Cir. 1983) (interpreting the Federal 
Service Labor-Management Relations Act, 5 U.S.C. ss 7101-
7135 (Supp. III 1979)), contended that bargaining over the 
implementation of that decision was mandatory. The charge 
was submitted to the Unfair Labor Practices Panel as pre-
scribed by the Code s 2.13(1). The Panel rejected the Au-
thority's contention that because the surveillance was con-
ducted pursuant to a criminal investigation bargaining over 
implementation was not required, and found the Authority in 
violation of the Code. The Authority told the union that it 
planned to file a petition for relief from the Panel's decision in 
the Virginia courts pursuant to s 2.13(4) of the Code, but 


before it could do so, the union filed suit in the District Court 
for the District of Columbia seeking to enforce the Panel's 
decision. The next day the Authority brougt its petition for 
review in the Virginia Circuit Court.1 The union then amend-
ed its complaint in district court to include a claim that the 
refusal to bargain over the impact and implementation of the 
surveillance constituted a violation of the lease.

 The district court dismissed the union's complaint, but the 
basis its decision is unclear. The court obliquely explained 
that because the dispute was over the Panel's findings and 
not over the fairness of the procedures by which the Panel 
reached its conclusions, the Code's scheme for review in the 
Virginia courts applied in this case. However, the court also 
suggested-even if it did not explicitly say--that it had juris-
diction and was merely abstaining in favor of the ongoing 
state court proceeding.

 II.

 Both parties agree at least in theory that under the Au-
thority's statutory and regulatory regime, jurisdiction is 
granted to the federal courts for certain issues and to the 
Virginia courts for others. The parties disagree, however, on 
which jurisdictional category is implicated in this case. The 
union submits that the Act requires the Authority to "contin-
ue all collective bargaining rights enjoyed" (emphasis added) 
by its employees before the lease took effect and contends 
that had this dispute arisen while the firefighters were still 
federal employees, the Authority would have been required 
under our American Federation of Government Employees 
case to bargain over the impact and implementation of the 
surveillance. The union reasons, therefore, that the jurisdic-
tional provision in the Act entitles it to have its claim heard in 

__________
 1 The Virginia Circuit Court subsequently granted summary 
judgment for the Authority, reversing the Panel's decision. Metro-
politan Washington Airports Authority v. Metropolitan Washing-
ton Airports Authority Professional Firefighters Association Local 
3217, Chancery No. 97-0712 (Va. Cir. Apr. 2, 1998).

the federal courts--and that the federal courts should apply 
the FSLMRA to the dispute.

 The union relies on Metropolitan Washington Airports 
Authority Professional Fire Fighters Association Local 3217 
v. United States, 959 F.2d 297, 307 (D.C. Cir. 1992), in 
which--while noting that "the question whether jurisdiction 
over unfair labor practice matters properly lies in Virginia 
courts [was] not yet ripe for decision" in that case--we 
recognized the difficulty of the question and commented that 
"it is unclear whether there are any circumstances under 
which this clause [giving jurisdiction to Virginia courts] would 
have any effect." Accordingly, the union argues that the 
district court improperly abstained from exercising federal 
jurisdiction. The Authority counters that, pursuant to the 
Code, jurisdiction to review the Panel's decisions lies in the 
Virginia courts, and the district court properly dismissed the 
claim for lack of jurisdiction. In any event, the Authority 
argues that res judicata bars the federal action. The Author-
ity adds that even assuming that the district court could 
assert jurisdiction over this claim, it properly abstained.

 It is important to emphasize that the union does not 
challenge the validity of the Code, nor does it claim that the 
provision of the Code granting jurisdiction to Virginia courts 
to review the Panel's disposition of unfair labor practice 
claims is unlawful. Rather, the union argues that it can elect 
to go to federal court, and gain the benefit of federal govern-
ment labor relations law, simply by alleging that the unfair 
labor practice complained of--the refusal to bargain over 
video surveillance--is itself a violation of the lease. The 
union implies that its interest in vindicating the federally 
protected collective bargaining rights which existed at the 
time the lease took effect would be undermined if the Virginia 
courts alone were allowed to review the Panel's adjudications 
of unfair labor practice claims. The union alternatively ar-
gues that even if the Virginia court has "initial" jurisdiction to 
review the Panel's decisions, the union should have two bites 
at the apple--it should be able first to petition a Virginia 
court for review under the Code, and, if it loses, it should 
then have recourse to federal court to argue that the same 


unfair labor practice would violate the FSLMRA and there-
fore that the lease is violated.

 Unfortunately, neither the parties nor the district court 
came to grips with the nub of the underlying issue here: how 
to delineate the boundaries of the two jurisdictional provi-
sions. Although the interrelationship between federal and 
Virginia jurisdiction and substantive law under the Act is 
certainly peculiar, and more than a little puzzling, we think 
the key to determining the proper boundary between these 
provisions is to examine the structure and purpose of the Act.

 Congress' stated purpose in transferring control over the 
airports to the Authority was to "achieve local control, man-
agement, operation, and development" of the airports. 49 
U.S.C.A. s 49102(a). But the Act does not simply turn the 
airports over to Virginia or the District of Columbia, rather it 
establishes a regime under which the Authority balances the 
"continuing but limited [federal] interest" in the airports, id. 
at s 49101(3), with the "growing local interest," id. at 
s 49101(7). This balance is reflected in the Authority's juris-
dictional provisions.

 Prior to the creation of the Authority, airport employees 
were federal employees whose collective bargaining rights 
were adjudicated under federal law. See Metropolitan Wash-
ington Airports Authority Professional Fire Fighters Assoc., 
959 F.2d at 298. The statutory guarantee of the airport 
employees' continuing "collective bargaining rights" certainly 
imposes some federal limitation on the formulation, and per-
haps the implementation, of the Code. But in creating the 
Airports Authority, Congress expressly transferred the man-
agement and operation of the airports--including employ-
ment matters--from the federal to the state/local level. 49 
U.S.C.A. ss 49101(7); 49102(a). Congress provided that the 
continuing federal interest would be vindicated through "a 
lease mechanism which provides for local control and opera-
tion." Id. at s 49101(10). We can generally assume that the 
Authority's obligation to continue the employees' collective 
bargaining rights is discharged through the Code and its 
implementation.


 We think the federal/local balance implicit in the Act is best 
honored by allocating to Virginia courts jurisdiction to review 
challenges to the application of the Code and to federal 
district courts jurisdiction over facial challenges to the Code 
(as violations of the lease). Here, because the union brings 
an unfair labor practice claim, which involves an interpreta-
tion of the Code, it is an as-applied challenge and jurisdiction 
lies in the Virginia courts, not in federal court. If the union 
had argued that the Code on its face violated the lease in 
some manner, then the federal district court would have had 
jurisdiction.

 Perhaps a case might arise where a decision of the Virginia 
courts is claimed to so undermine the framework of collective 
bargaining as to be, in effect, a betrayal of the Code; the 
union might argue that to challenge that decision is to raise a 
de facto facial challenge to the Code as a violation of the 
lease, allowing for federal court jurisdiction. We rather 
doubt whether that argument would succeed, since it might 
be thought equivalent to asking an inferior federal court to 
review the judgment of a state court. See District of Colum-
bia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) 
(citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 416 
(1923)) (holding that 28 U.S.C. s 1257 grants appellate juris-
diction over judicial decisions of state courts only to the 
United States Supreme Court and not to inferior federal 
courts).2 In any event, the union makes no such assertion 

__________
 2 There would be no claim preclusion in such a situation, because 
in the unique statutory scheme here, the federal claim of a violation 
of the lease would not be analytically the same legal issue as a claim 
of a misapplication of the Code and so could not be raised in the 
Virginia courts. See Migra v. Warren City School Dist. Bd. of 
Educ., 465 U.S. 75, 81 (1984) ("A federal court must give to a state-
court judgment the same preclusive effect as would be given that 
judgment under the law of the state in which the judgment was 
rendered."). Under Virginia law, a final judgment on the merits in 
a prior action is conclusive only as to questions actually decided as 
well as to matters the parties might have litigated. Kemp v. 
Miller, 186 S.E. 99, 103-04 (1936) (citations omitted) (cited in 
Guerrero v. Katzen, 774 F.2d 506, 508 (D.C. Cir. 1985)).

here. It simply seeks the benefit of the same decision on a 
rather controversial question of labor relations law as it would 
have received had the Authority never been created and had 
the union's members remained federal employees. That it 
cannot gain simply by arguing that the Authority violated the 
lease. For the foregoing reasons, the district court's dismiss-
al of the union's claim is affirmed.

 So ordered.

__________
 We note, however, that relitigation of the underlying facts may be 
barred under the doctrine of issue preclusion. See Marrese v. 
American Academy of Orthopedic Surgeons, 470 U.S. 373, 382 
(1985) (citing Kremer v. Chemical Constr. Corp., 456 U.S. 461, 467 
(1982)) (observing that a federal court applies state rules of issue 
preclusion to determine whether a matter actually litigated in state 
court may be relitigated in a subsequent federal proceeding).


Karen LeCraft Henderson, Circuit Judge, concurring:

 The holding in Steel Co. v. Citizens for a Better Env't, 118 
S. Ct. 1003, 1012-16 (1998), compels me to concur on the 
jurisdictional ground set forth in the majority opinion. I 
note, however, that the Union's sole surviving claim is plainly 
res judicata.